929 A.2d 483

**ATTORNEY GRIEVANCE COMMISSION of Maryland**

v.

**Robert A. SAPERO.**

**Misc. Docket AG No. 34, Sept. Term, 2006.**

Court of Appeals of Maryland.

Aug. 1, 2007.

462

Glenn M. Grossman, Deputy Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n), for petitioner.

Melvin Sykes, Baltimore, for respondent.

Argued before BELL, C.J., RAKER, CATHELL *, HARRELL, BATTAGLIA, GREENE and ALAN M. WILNER, (Retired, Specially Assigned), JJ.

GREENE, J.

The Attorney Grievance Commission of Maryland ("Petitioner"), by Bar Counsel acting pursuant to Maryland Rule 16–751,[1] filed a Petition For Disciplinary or Remedial Action in the Court of Appeals against Robert A. Sapero ("Respondent"). The Petition alleged that Respondent, who was admitted to the Bar of this Court on November 19, 1964, violated Rules 1.5 (Fees),[2] 1.15 (Safekeeping

---

* Cathell, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Maryland Rule 16–751, in relevant part, provides:

   (a) **Commencement of disciplinary or remedial action.** (1) Upon approval of Commission. Upon approval of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

2. Rule 1.5(c) provides:

   (c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial, or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be responsible whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall

Property),[3] 8.1 (Bar Admission and Disciplinary Matters),[4] and 8.4 (Misconduct)[5] of the Maryland Rules of Professional Conduct ("MRPC"). Pursuant to Maryland Rule 16–752(a),[6] we referred the matter to the Honorable Martin P. Welch, of the Circuit Court for Baltimore City, to conduct an evidentiary hearing and render findings of fact and recommend conclusions of law. On February 12, 2006, Judge Welch held a

provide the client with a written statement stating the outcome of the matter, and if there is a recovery, showing the remittance to the client and the method of its determination.

3. Rule 1.15(a) provides:
   (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

4. Rule 8.1 in relevant part provides:
   An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
   (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

5. Rule 8.4 in relevant part provides:
   It is professional misconduct for a lawyer to:
   (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
   (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
   (d) engage in conduct that is prejudicial to the administration of justice;

6. Rule 16–752(a) provides:
   (a) **Order.** Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.

hearing and on March 29, 2007, issued Findings of Fact and Conclusions of Law, in which he found that Robert A. Sapero had violated MRPC 1.15(a), 1.15(c), and 8.1(b).

## I. FACTUAL FINDINGS AND CONCLUSIONS OF LAW

### FINDINGS OF FACT

After an evidentiary hearing, Judge Welch made the following factual findings and conclusions of law:

1. The Respondent was admitted to the Bar of Maryland on November 19, 1964, and has maintained an office for the general practice of law in Baltimore City.

2. That on or about February 15, 2006, the Attorney Grievance Commission, pursuant to Maryland Rule 16–743(f), directed Bar Counsel to file charges against the Respondent and said direction was received by Bar Counsel on or about February 21, 2006.

3. The Respondent represented Alston J. Andrews and his wife in connection with claims arising out of an automobile accident, involving Mr. Andrews, which occurred in April 2000. The Respondent's fee was contingent upon the outcome of the case.

4. The claims arising out of the accident were settled in or about October 2002.

5. The settlement included $629,516.00, which funded a structured settlement by way of an annuity providing periodic payments to Mr. Andrews and periodic payments toward Respondent's fee.

6. A copy of the letter of transmittal, explaining the check, was promptly furnished to the client by the Respondent.

7. A second insurance company check for $295,484.00 was paid on or about November 7, 2002. These latter funds were deposited in the escrow account by request of Mr. Andrews and were to be kept safe by Respondent for the use of Mr. Andrews and/or his wife as

might be requested, and for the payment of medical bills.

8. A complaint against Mr. Sapero was filed with the Petitioner which alleged that the Respondent had not handled his clients' funds appropriately. The complaint purported to be signed by Mr. Andrews but Mr. Andrews stated that the signature was not his and that he was quite satisfied with the Respondent's representation. It turned out the complaint was signed by a family member, whose allegations Mr. Andrews repudiated.

9. Bar Counsel's investigation revealed that the Respondent maintained the funds in trust properly and consistent with his fiduciary responsibilities.

10. The Respondent did not provide his clients with a written statement indicating the outcome of the matter showing the remittance to the client and the method of its determination until on or about January 17, 2006, more than three years after the case was settled [Exhibit 10, Admissions], although an interim statement was provided under date of December 8, 2005. The January 17, 2006, statement updated the earlier interim statement.

11. The Petitioner, while investigating the complaint, determined that the Respondent maintained significantly more funds in his trust account than he should have had for the benefit of Mr. and Mrs. Andrews and his other clients.

12. The Petitioner determined that the overage was caused by the Respondent's failure to remove earned fees from his account on several occasions between 1991 and 2005, a period during which he delegated the record keeping of his escrow account to a succession of employees.

13. After the Petitioner's investigation of the Respondent's trust account was concluded, the Respondent, on or about January 18, 2006, removed from his escrow

account all the unearned fees as well as funds associated with checks which had not been negotiated.

14. The Respondent took other remedial steps set forth *infra*.

15. The following earned fees were not withdrawn timely from the Respondent's trust account:

a. December 1991, $2,000.00

b. June 1993, $5,166.00

c. February and August 1996, fees totaling $3,116.66

d. August 1997, $22,330.00

e. April 2001 and June 2002, fees totaling $1,442.75

16. Commingling of the Respondent's funds with those of his clients over a period of [sic] excess of thirteen years was caused by the Respondent's poor record keeping and his failure to reconcile his trust account on a regular basis. This was the conclusion of the certified public accountant engaged by the Respondent to reconcile and remediate the Respondent's escrow account.

17. As a result of the Respondent's failure to adequately maintain the records of his trust account, he filed state and federal personal income tax returns which were inaccurate with respect to his income. However, the Respondent generally overpaid his estimated taxes during the years he failed to remove his fees from trust.

18. The estimated taxes were in amounts more than sufficient to cover his tax liability for the fees not withdrawn from his escrow account. The Respondent received credit for such overpayments.

19. There is no clear and convincing evidence that the Respondent intentionally failed to report earned income to the taxing authorities.

20. The Respondent filed amended tax returns in September 2006 which set forth additional income for the five tax years in which income was earned and not withdrawn from escrow. He paid a total of $12,071.00, representing his tax liability and $1,681.00, representing his state tax liability.

21. After the Petitioner filed its Statement of Charges in this matter, the Respondent engaged the accounting firm of KAWG & F to ascertain (1) the amount by which his escrow account exceeded the total amount of client funds he held in escrow and (2) the sources and causes of the overage.

22. The accountants reviewed the file in every case settled between 1990 and 2003, some three hundred in all, and compared the settlement sheets, checks and bank statements regarding every transaction within the escrow account, thereby completing a full reconciliation. The Respondent paid the accounting firm over $28,000 for the services it provided over a period of four to five months which provided the information requested by Bar Counsel.

23. The Respondent has further revised his office procedures with respect to the maintenance of this trust account and client files by engaging as an associate Kathleen M. O'Connell, Esquire, who, with the assistance of Respondent's CPA, has set up and maintained a Quickbooks accounting file with controls that enable Respondent to account for all of the funds in his escrow account by client.

24. The system at any given time will run a report that will show the total expensed [sic] that have been paid for any particular client as of a specified date, and the net balance held in escrow for the client.

25. The bank balance of the escrow account is reconciled on a current basis with the grand total for the Quickbooks report. At the time a client's case is closed, a settlement sheet is presented to the client and a signed copy is retained in the client's file.

26. The net proceeds, after all expenses, are disbursed as Respondent and the client agree. Entries are made in the system contemporaneously with the event to be recorded, and Respondent, himself, regularly reviews the Quickbooks system's reports.

27. In the course of the investigation of the complaint, Petitioner sought information from the Respondent. Respondent submitted a written response on May 2, 2005.

28. On May 27, 2005, Deputy Bar Counsel forwarded a letter to the Respondent requesting a settlement sheet with respect to the Andrews' case and an accounting for the medical bills.

29. Respondent telephoned Petitioner's investigator, Marc Fiedler, several times, but no written response was forthcoming. An additional request was made on June 24, 2005. When no substantive response was forthcoming, a subpoena was issued on August 5, 2005, and said subpoena was served on Respondent on August 9, 2005.

30. The subpoena required the Respondent to produce records associated with his trust account and the Andrews' case on August 30, 2005, at the office of the Bar Counsel. The Respondent did not comply with the subpoena.

31. On or about September 1, 2005, the Respondent telephoned Mr. Fiedler and explained that he was unable to produce the subpoenaed documents on the date requested.

32. On or about September 7, 2005, the Respondent produced to Mr. Fiedler, in response to the subpoena, a box of unorganized documents from which Mr. Fiedler could not within a reasonable time extract the requested information or determine if the information could be extracted from the records presented.

33. During Bar Counsel's investigation, Respondent was a sole practitioner with an extensive litigation and general practice.

34. The Respondent's response to Bar Counsel's request for information was dilatory, although he never refused to produce, and never denied access to, any information he had.

35. Respondent's failure to timely respond to Bar Counsel's request for information was primarily caused by his inability to extract information from his disorganized files and trust account records, but he did not explain to Bar Counsel's office the particular difficulties he was experiencing garnering the information sought.

36. At the hearing, the Respondent stated that in the case of another client, he did not remove earned fees from his escrow account for the prophylactic purpose of covering outstanding medical bills for plastic surgery, should they arise. He was prepared to reduce his fee or for go [sic] a portion of his fee to allow that client the ability to have plastic surgery. (Uncontradicted testimony of the Respondent.)

## CONCLUSIONS OF LAW

### Maryland Lawyers' Rules of Professional Conduct 1.5(c) Fees

The Respondent is alleged to have violated M.R.P.C. 1.5(c) by failing to provide the client with a written statement indicating the outcome of the case, show remittance to the client, and indicate the method of its determination upon conclusion of the matter.

Maryland Rule of Professional Conduct 1.5(c) provides that:

"A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be responsible whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter, and, if there is a recovery, showing the remittance to the client and the method of its determination."

Bar counsel contends that though the Respondent provided an interim statement to his client, the Respondent's failure to provide the client with a written statement indicating the outcome of the case, show remittance to the client, and indicate the method of its determination upon conclusion of the matter violated M.R.P.C. 1.5(c).

The Respondent contends that the obligation to provide a written statement arises only "upon conclusion of a contingent fee matter." The Respondent argues that the "matter" in his client's case continued to be active, after the personal injury claim was settled, because substantial medical bills were being contested and escrowed funds were being held. The Respondent states that the escrowed funds were being held with the client's consent pending the outcome of the contested medical bills. The Respondent did provide interim statements in December 2005 and January 2006 while the medical bills continued to be contested. The Respondent argues further, based on interim statements, that he kept the client "fully apprised of the status of his matter as the matter progressed." In addition, the Respondent argues that M.R.P.C. 1.5(c) does not specifically define "conclusion of a contingent fee matter" and, as such, the ambiguity of M.R.P.C. 1.5(c) in its interpretation of "matter" should, therefore be "resolved in favor of the Respondent." (Respondent's proposed findings of fact and conclusions of law, p. 3.)

This Court finds that though M.R.P.C. 1.5(c) required the Respondent to provide a written statement (1) stating the outcome of a contingent fee matter *and* (2) showing the remittance to the client and method of its determination, the Respondent could not do both until the case had concluded. The Respondent may have been able to provide a statement as to the outcome, but was unable to show the remittance and method of its determination because of the substantial contested medical bills. The matter had not been concluded. Without the resolution of the substantial medical bills, any statement would be inaccurate as to the showing of the remittance and its determination. The two interim state-

ments provided by the Respondent to the client are an indication of the Respondent's attempt to comply with the Rule, even though a statement fully complying with the Rule was not provided until January 17, 2006.

For these reasons, the Court finds that the Respondent did not violate M.R.P.C. 1.5(c).

### Maryland Lawyer's Rule of Professional Conduct 1.15(a) Safekeeping Property

The Respondent is alleged to have violated M.R.P.C. 1.15(a) by failing to remove earned fees, thereby commingling his funds with those of his clients and failed to regularly reconcile his escrow account.

Maryland Rules of Profession Conduct 1.15(a) provides that:

"(a) A lawyer shall hold property of clients or third persons that is in lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after the termination of the representation."

Bar Counsel contends that the Respondent failed to remove earned fees from his trust account between 1991 and 1995,[7] thereby commingling his own funds with those of his clients. In failing to remove his earned fees in his trust account, Bar Counsel contends that the Respondent violated M.R.P.C 1.15(a). *Attorney Griev. Comm'n v. Zuckerman,* 386 Md. 341, 370, 872 A.2d 693, 710–711 (2005); *Attorney*

---

7. This is a clerical error, as evidenced by the hearing judge's numerous prior references to the "Respondent's failure to remove earned fees from his account on several occasions between 1991 and 2005." The correct time period is between 1991 and 2005, consistent with the hearing judge's findings of fact.

*Griev. Comm'n v. Sliffman,* 330 Md. 515, 526, 625 A.2d 314, 319 (1993).

The Respondent contends that: (1) the Respondent's failure to withdraw fees timely from his escrow account was not motivated by any desire for personal advantage, (2) the largest fee, not promptly withdrawn, was left in the account in order to benefit the client, in accordance with Respondent's agreement to contribute as much of his fees as would be necessary toward the cost of further surgery, and when Respondent ascertained that there would be no further surgery, the $22,330.23 was withdrawn. (Respondent's Findings of Fact and Conclusions of Law, p. 2 and ¶ 36.)

This Court finds that the Respondent's conduct did violate M.R.P.C. 1.15(a), by commingling funds when he failed to remove earned fees. However, the failure to remove the earned fees was explained as resulting from the Respondent's poor record keeping. The evidence indicates that the Respondent lacked any desire to benefit personally in failing to remove the earned fees.

There is no evidence that the Respondent's failure to remove earned fees from the trust fund was intentional and motivated by "fraud, dishonesty, or deceit." *Attorney Griev. Comm'n v. Awuah,* 346 Md. 420, 697 A.2d 446 (1997). Further, Bar Counsel concedes that a certified public accountant, engaged by the Respondent to reconcile and remediate the Respondent's escrow account, concluded that the commingling of the Respondent's funds with those of his over a period in excess of thirteen years was caused by the Respondent's poor record keeping and his failure to reconcile his trust account on a regular basis. Bar Counsel concedes further that on or about January 18, 2006, the Respondent removed from his escrow account earned fees as well as funds and non-negotiated checks. Ultimately, Bar Counsel's investigation revealed that the Respondent maintained the funds in trust properly and consistent with his fiduciary responsibility. (Plaintiff's Exhibit, p. 2.)

For these reasons, the Court finds that the Respondent did violate M.R.P.C. 1.15(a), but was an unintentional violation.

### Maryland Lawyer's Rules of Professional Conduct 1.15(c) Safekeeping Property

The Respondent is alleged to have violated M.R.P.C. 1.15(c) by commingling his funds with those of his clients without written consent.

Maryland Rules of Professional Conduct 1.15(c) provides that:

"[U]nless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses are incurred."

Bar Counsel and the Respondent concede that the Respondent "deposited funds in the escrow account *by request* of Mr. Andrews and were to be kept safe by Respondent for the use of, his client, Mr. Andrews and/or his wife, as might be requested, and for the payment of medical bills." (Plaintiff's Exhibit, p. 1.) In addition, a second insurance check was deposited into Respondent's trust account. Mr. Andrews' request can be interpreted as the informed client consent, although not confirmed in writing, which indicated a different arrangement between the Respondent and the client. (Plaintiff's Exhibit, p. 2.)

The Respondent contends that while the Respondent left the earned fees in the escrow account, the failure to remove the fees were, at most, the result of the Respondent's inadvertence to remove the fees. There was no evidence that the Respondent was motivated by a desire for personal gain and did not lead to the ultimate consequences that the Rule is in place to prevent. (Respondent's Proposed Findings of Fact and Conclusions of Law, p. 2.)

The Court finds that the Respondent did not remove earned fees in a timely manner from the trust account, as

they were earned and as required by M.R.P.C. 1.15(c), thereby violating M.R.P.C. 1.15(c). In addition, there is no evidence that the client gave his written consent, as required by the Rule, to allow the Respondent to leave his earned fees in the client's account. However, the client requested the Respondent to keep funds for the payment of medical bills. Further, the Respondent did take remedial steps and, eventually, removed from his escrow account all the earned fees as well as funds associated with checks, which had not been negotiated. (Plaintiff's Exhibit, p. 2.) There is no evidence that the Respondent's failure to remove the earned fees, in a timely manner, was motivated by personal gain or resulted in financial harm to the client.

For these reasons, the Court finds that the Respondent did violate M.R.P.C. 1.15(c), but was an unintentional violation.

### Maryland Lawyer's Rules of Professional Conduct 8.1(b) Bar Admission and Disciplinary Matters

The Respondent is alleged to have violated M.R.P.C. 8.1(b) by failing to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly failing to respond to a demand for information from a disciplinary authority.

Maryland Rules of Professional Conduct 8.1(b) provides that:

"[A] lawyer in connection ... with a disciplinary matter shall not (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admission or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

Bar Counsel contends that the Respondent's failure to respond to Bar Counsel's request for information, despite explanation in the stipulated facts, provides evidence that the Respondent was "knowingly derelict." *Attorney Griev.*

*Comm'n v. Fezell,* 361 Md. 234, 249–250, 760 A.2d 1108, 1116 (2000); *Attorney Griev. Comm'n v. Bridges,* 360 Md. 489, 759 A.2d 233 (2000).

The Respondent contends that on May 2, 2005, the Respondent, by a letter to Bar Counsel, answered the complaint that led to Bar Counsel's investigation. In Respondent's letter to Bar Counsel, the Respondent explained that there are "substantial additional escrow funds allocated to medical bills . . . some of which have been negotiated and settled, and others which are pending settlement negotiations. This may possibly result in additional funds which would be provided to Mr. Andrews when and if there is a residue." (Plaintiff's Exhibit, Mr. Sapero's letter to Bar Counsel.)

The Court finds that the Respondent, upon investigation, telephoned the Bar Counsel investigator, Marc Fiedler several times but failed to provide a written response. The Respondent's failure to provide a written response, caused the Petitioner to issue a subpoena requiring the Respondent to produce records associated with his trust account and the Andrew's, his client's, case, in which the Respondent did not comply timely with the subpoena. The Respondent telephoned the Bar Counsel investigator and explained that he was unable to produce the subpoenaed documents by the date requested. Six days later, the Respondent produced to the investigator a box of unorganized documents from which the investigator could not in a timely manner extract the requested information or determine if the information could be extracted from the records presented. (Plaintiff's Exhibit, p. 4.) The Respondent's response to Bar Counsel's request for information was dilatory, although he never refused to produce, and never denied access to, any information he had. (Plaintiff's Exhibit, p. 4.) Both parties concede that the primary reason for the Respondent's failure to timely respond to Bar Counsel's request was caused by his inability to extract information form his disorganized files and trust account records. (Plaintiff's Exhibit, p. 5.)

For these reasons, the Court finds that the Respondent did violate M.R.P.C. 8.1(b).

### *Maryland Lawyer's Rules of Professional Conduct 8.4(d) Misconduct*

The Respondent is alleged to have violated M.R.P.C. 8.4(d) by engaging in conduct that is prejudicial to the administration of justice.

Maryland Rules of Professional Conduct 8.4(d) provides that:

"[I]t is professional misconduct for a lawyer to (d) engage in conduct that is prejudicial to the administration of justice."

Bar Counsel contends that the Respondent failed to report earned income due to the Respondent's failure to remove earned fees. Both Bar Counsel and the Respondent concede that there is "no clear and convincing evidence that the Respondent intentionally failed to report earned income to the taxing authorities." (Plaintiff's Exhibit, p. 3.) Bar Counsel's investigation revealed that Mr. Sapero's estimated taxes were sufficient to cover his tax liability for the earned fees that were not withdrawn from the escrow account. (Plaintiff's Exhibit, p. 3.)

Bar Counsel and the Respondent concede that the initial complaint that alleged the Respondent's misconduct in handling his client's funds, and thereby triggering Bar Counsel's investigation, was purported to be signed by Mr. Andrews, the client. Bar Counsel and the Respondent conceded that it was later revealed that Mr. Andrews' signature was forged on the complaint and that Mr. Andrews was quite satisfied with the Respondent's representation (Plaintiff's Exhibit, p. 1.)

The Court finds that the Respondent's failure to report earned income by not withdrawing his funds from the escrow account did not impose any tax liability because he sufficiently overestimated taxes. The Court further finds that the genesis of this complaint was pursuant to a forged

signature of the client (Alston J. Andrews) and the client is satisfied with the Respondent's representation.

For these reasons, the Court finds that the Respondent did not violate M.R.P.C. 8.4(d).

## II. STANDARD OF REVIEW

■ This Court has original and complete jurisdiction over attorney disciplinary proceedings. *Attorney Grievance Comm'n v. Cherry–Mahoi*, 388 Md. 124, 152, 879 A.2d 58, 76 (2005) (citations omitted). As noted in *Attorney Grievance Comm'n v. Mahone*, 398 Md. 257, 265–66, 920 A.2d 458, 463 (2007):

> We accept a hearing judge's findings of fact unless we determine that they are clearly erroneous. *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006). As to the scope of our review, we take into consideration whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). This Rule provides that Bar counsel has the burden of proving the averments of the petition by clear and convincing evidence, and the attorney who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter of mitigation or extenuation by a preponderance of the evidence. *Guida*, 391 Md. at 50–51, 891 A.2d at 1095 (citing Rule 16–757(b)). "Weighing the credibility of witnesses and resolving any conflict in the evidence are tasks proper for the fact finder." *State v. Stanley*, 351 Md. 733, 750, 720 A.2d 323, 331 (1998). With regard to the hearing judge's conclusions of law, our review is *de novo*. *Attorney Grievance Comm'n v. Harrington*, 367 Md. 36, 49, 785 A.2d 1260, 1267–68 (2001).

## III. DISCUSSION

In this case, the hearing judge concluded that Respondent violated Rules 1.15(a) and (c), and 8.1(b). Pursuant to Md.

Rule 16–758,[8] either party may file post-hearing written exceptions to the findings and conclusions of the hearing judge. Specifically, Maryland Rule 16–759(b)(2)(B) provides:

(B) If exceptions are filed. If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses.

■ Petitioner excepts to the hearing judge's statement that "Respondent's failure to report earned income by not withdrawing his funds from the escrow account did not impose any tax liability because he sufficiently overestimated taxes." According to Petitioner, the trial judge's finding was erroneous and inconsistent with his finding that when "Respondent overpaid his estimated taxes, he received credit for such overpayment." Specifically, the hearing judge found that there was a tax liability which Respondent paid: "$12,071.00, representing his [federal] tax liability and $1,681.00, representing his state tax liability for income earned but not withdrawn from escrow." We agree that it was inconsistent for the hearing judge to state that Respondent's failure to report earned income did not impose any tax liability. Clearly, Respondent's receipt of earned income imposed a tax liability, notwithstanding the fact that he overpaid his estimated taxes. *See Attorney Grievance Comm'n v. Sliffman*, 330 Md. 515, 526, 625 A.2d 314, 319 (1993) (noting that ordinarily attorney fees must be reported in the year in which they are earned). Considering the fact that Respondent's amended 2006 tax returns addressed the tax liability for the unreported

---

**8.** Maryland Rule 16–758 provides, in pertinent part:

(b) Exceptions; recommendations. Within 15 days after service of the notice required by section (a) of this Rule, each party may file (1) exceptions to the findings and conclusions of the hearing judge and (2) recommendations concerning the appropriate disposition under Rule 16–759(c).

Petitioner and Respondent filed written exceptions.

fees left in his trust account, it appears that the hearing judge's conclusion that there was no tax liability imposed was an inaccurate characterization of the undisputed facts. We note, however, as a practical matter, that the hearing judge's misstatement does not change the outcome of this case because of his undisputed finding that there was no clear and convincing evidence that Respondent intentionally failed to report earned income to the taxing authorities.

Petitioner also excepts to the hearing judge's conclusion that Respondent did not violate Rule 1.5(c). Petitioner argues that the legal dispute with the opposing party in the underlying case which generated the funds had ended. Petitioner contends that "it is unreasonable to conclude that ... the remittance to the client and the method of its determination may be delayed for three (3) years or more ... because of contested medical bills having nothing to do with the original dispute." Petitioner notes that "the purpose of ... Rule [1.5] ... is to appri[s]e the client of substantive information about his case and the funds generated by a settlement" and concludes that Respondent's actions "cannot be squared with the Rule's obvious concern for guidance and benefit of the client."

Respondent acknowledges that the obligation to provide a written statement arises "upon conclusion of a contingent fee matter" but that in the instant case, his clients' case continued to be active, after the personal injury claim was settled, because substantial medical bills were contested and the settlement proceeds were held in escrow. The hearing judge concluded that "even though a statement fully complying with ... Rule [1.5(c) ] was not provided until January 17, 2006," Respondent did not violate Rule 1.5(c). As discussed *infra,* we disagree with the hearing judge's interpretation of Rule 1.5(c) and therefore sustain Petitioner's exception.

██ Respondent represented Alston John Andrews and his wife, on a contingency fee basis, in connection with claims arising out of an automobile accident. The Andrews' claims were settled in October 2002. According to the hearing judge, "[t]he settlement included $629,516.00 which funded a struc-

tured settlement by way of an annuity providing periodic payments to Mr. Andrews and periodic payments toward Respondent's fee." In accordance with the settlement, "[a] second insurance company check for $295,484.00 was paid on or about November 7, 2002." The hearing judge found that "[t]hese latter funds were deposited in the escrow account by request of Mr. Andrews and were kept safe by Respondent for the use of Mr. Andrews and/or his wife as might be requested, and for the payment of medical bills."

According to the plain language of Rule 1.5(c), the Respondent, at the conclusion of the underlying contingency fee matter, was required to "provide the client with a written statement stating the outcome of the matter, and, if there [was] a recovery, show the remittance to the client and the method of its determination." Specifically, the issue raised is the timing of the written statement; whether it must be provided at the time of the actual settlement or recovery on the claim, or at a later date when the remittance to the client less all expenses and the method of its determination are an absolute certainty.

As we said in *Attorney Grievance Comm'n v. Fezell*, 361 Md. 234, 248, 760 A.2d 1108, 1115 (2000):

> In construing a rule, we apply principles of construction similar to those used to construe a statute. *See Holmes v. State*, 350 Md. 412, 422, 712 A.2d 554, 558 (1998). We seek to discern legislative intent, beginning with an examination of the text of the rule. *See State v. Harrell*, 348 Md. 69, 80, 702 A.2d 723, 723 (1997). We give the words their ordinary and usual meanings. *See Holmes*, 350 Md. at 412, 712 A.2d at 558. If the language is clear and unambiguous, our analysis ends. *See id.* Even where the language is clear, however, we may look to other sources that bear on the purpose or intent of the rule. *See State v. Wiegmann*, 350 Md. 585, 592, 714 A.2d 841, 844 (1998).

In accord with the principles of construction stated in *Fezell*, we reject the hearing judge's determination that the underlying matter was not concluded until "the remittance to

the client and the method of its determination" could be finally and accurately stated. Rule 1.5(c), in relevant part, provides:

> Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter, and if there is a recovery, showing the remittance to the client and the method of its determination.

Settlement is defined as "[a]n agreement ending a dispute or lawsuit." *Black's Law Dictionary* 1404 (8th ed.2004); *see also Allstate Ins. Co. v. Stinebaugh*, 374 Md. 631, 648, 824 A.2d 87, 97 (2003) (noting that "a settlement agreement is 'an agreement to discharge a preexisting claim' ") (citations omitted). In the instant case, the contingent fee matter concluded upon the Andrews' acceptance of the settlement agreement and the deposit of the settlement proceeds into Respondent's escrow account. At that point or within a reasonable time thereafter, pursuant to the plain language of Rule 1.5(c), Respondent had a duty to report to his clients in writing the outcome of the matter, showing the remittance to the client and the method of its determination.

In accordance with the settlement agreement, Respondent obtained $925,000 on his clients' behalf. Payment of the settlement proceeds was structured: a large portion of the payout was made to the client in the form of an annuity and the balance of $295,484.00 was made available to the client, immediately, upon payment, subject to attorney fees, expenses and costs. Because the case settled and the matter concluded, Respondent should have furnished his clients with a written statement contemporaneously with the settlement of the case even though there were outstanding medical bills that were contested. To be certain, the fact that there were unpaid medical bills or contested bills did not alter the attorney's obligation under the MRPC to report in writing the outcome of the case, and to state the amounts the clients would receive and how that determination was made.

If Respondent had provided the Andrews with an interim statement immediately following the settlement, he could have

complied with Rule 1.5(c). The interim statements provided by Respondent in December 2005 and in January 2006, however, did not comply with Rule 1.5(c) because they were furnished three years after the issuance of the first check by the insurance company. Earlier written interim statements could have indicated that there were still outstanding medical bills, that Respondent would negotiate the payment of those bills, and show the estimated amount of the bills. In our view, Rule 1.5(c), not unlike Rule 1.4 (noting that an attorney shall "keep the client reasonably informed about the status of the matter") is a notice provision. Consistent with these rules, it is the obligation of counsel to adequately and timely inform the client concerning the relevant and important details of the case. A relevant and important detail concerning the present case was that certain medical bills were contested; and, at the time of settlement, Respondent could only estimate the amount of the contested bills. A written settlement sheet, furnished to the client contemporaneously with the deposit of the settlement proceeds, could have and should have reflected those facts. It was a violation of Rule 1.5(c) for Respondent to fail to provide his clients with a settlement sheet at the time of settlement, and to provide a settlement sheet to his clients more than three years after the conclusion of the contingent fee matter was not sufficient to comply with the Rule.

Respondent excepts to the hearing judge's conclusion that he violated Rule 8.1(b). Rule 8.1(b) states that an attorney shall not knowingly fail to respond to a lawful demand for information from a disciplinary authority. Bar Counsel contends that Respondent's failure to respond to its request for information, provides evidence that the Respondent was knowingly derelict. According to Respondent, "[t]here was a complete response [to Bar Counsel's request for information], as soon as the information could be compiled from the pertinent records, all of which were ... always open and accessible to Bar Counsel and his staff." Respondent argues that by hiring an accounting firm, he provided the information sought by Bar Counsel. The hearing judge concluded that although Respondent's failure to timely respond to Bar Counsel's request was

the result of his disorganized files and trust account records, Respondent nonetheless was dilatory in his response to Bar Counsel's request for information and therefore violated Rule 8.1(b).

In *Fezell, supra,* Howard Fezell violated Rule 8.1(b) by his failure to reply to five letters and two complaints sent to him by Bar Counsel regarding his representation of former clients. Mr. Fezell filed exceptions to the hearing judge's finding that he violated Rule 8.1(b), arguing, *inter alia,* that "in order to issue a lawful demand for information, Bar Counsel must issue a subpoena." *Fezell,* 361 Md. at 246, 760 A.2d at 1114. Rejecting Mr. Fezell's argument, we concluded that the subpoena power under Rule 16–704 was intended to enable Bar Counsel to obtain information from parties as an aide to its investigation of an attorney's conduct. *Fezell,* 361 Md. at 248, 760 A.2d at 1115. In that case, we noted that "[t]his court has a long history of holding that an attorney violates Rule 8.1(b) by failing to respond to letters from disciplinary authorities requesting information." *Fezell,* 361 Md. at 249, 760 A.2d at 1116. Further, we stated that "[t]he process of investigating complaints depends to a great extent upon an individual attorney's cooperation. Without that cooperation, the [disciplinary authority] is deprived of information necessary to determine whether the lawyer should continue to be certified to the public as fit." *Fezell,* 361 Md. at 255, 760 A.2d at 1119 (citations omitted). Similarly, in *Attorney Grievance Comm'n v. Bridges,* 360 Md. 489, 759 A.2d 233 (2000), Charles Bridges was charged, *inter alia,* with violating Rule 8.1(b). The Court found that the attorney violated Rule 8.1(b), by refusing to provide requested documents concerning the background and details of a former employee, including the nature of the former employee's services and compensation. The Court noted that although the initial complaints were filed against the former employee and not Mr. Bridges, he nonetheless had a duty to provide relevant information to Bar Counsel because Rule 8.1(b) "mandates that an attorney . . . respond adequately to the demands of a disciplinary authority concerning his or her employees." *Bridges,* 360 Md. at 513, 759 A.2d at 245–46.

In *Attorney Grievance Comm'n v. Obi*, 393 Md. 643, 904 A.2d 422 (2006), Uzoma Obi violated Rule 8.1(b) by failing to provide Bar Counsel with documents it requested during the course of its investigation. In *Obi*, Bar Counsel requested "client ledger cards, deposit slips, cancelled checks, and monthly bank statements for each month of the pertinent period of time." 393 Md. at 649, 904 A.2d at 425. In his submissions to Bar Counsel, Mr. Obi failed to include the requested client ledger cards, deposit slips, as well as copies of checks drawn on his escrow account for the relevant period. *Obi*, 393 Md. at 649, 904 A.2d at 426. Mr. Obi filed exceptions to the hearing judge's finding that Mr. Obi violated Rule 8.1(b), arguing that after Bar Counsel subpoenaed Mr. Obi's financial institution, he believed that any efforts by him to obtain and provide bank records would be duplicitous and therefore unnecessary. We disagreed, holding that Mr. Obi had a duty, pursuant to Rule 8.1(b), to respond to a lawful demand for information in a timely manner. *Obi*, 393 Md. at 656, 904 A.2d at 430.

In the present case, on May 27, 2005, Deputy Bar Counsel requested that Respondent furnish a copy of the settlement sheet pertaining to the Andrews' case and an accounting of all outstanding medical bills. Respondent "telephoned Petitioner's investigator, Marc Fielder, several times, but provided no written response." On June 24, 2005, an additional request was made. Finally, on August 5, 2005, a subpoena was issued and was served, on Respondent, on August 9, 2005: "The subpoena required the Respondent to produce records associated with his trust account and the Andrews' case on August 30, 2005." Respondent failed to comply with that request. Respondent telephoned, on or about September 1, 2005, to explain that he was unable to produce the requested documents by August 30, 2005. Respondent provided "a box of unorganized documents" in response to the subpoena on September 7, 2005. Because of the state of disorganization of the documents, Mr. Fiedler was not able to extract the requested information within a reasonable time. The hearing judge further found that Respondent was a

"sole practitioner with an extensive litigation and general practice" and that his "failure to timely respond to Bar Counsel's request was primarily caused by his inability to extract information from his disorganized filed [sic] and trust account records." The hearing court ultimately found that, although Respondent's response was "dilatory[,] . . . he never refused to produce, and never denied access to, any information he had."

In *Bridges*, *Fezell*, and *Obi*, the respondents failed to provide the requested documents entirely, whereas in this case, Respondent attempted to comply with the subpoena, but did not comply, in a timely manner, because of disorganization in his record keeping practices. Respondent's disorganization does not excuse his violation of Rule 8.1(b). Pursuant to Rule 8.1(b), it was Respondent's duty to respond to the lawful demand from Bar Counsel for information. His failure to produce documents in a timely manner and in a format that would permit their use by Bar Counsel constituted a violation of that Rule. Therefore, we overrule Respondent's exception to the hearing judge's conclusion that Respondent's conduct violated Rule 8.1(b).

■ Both Petitioner and Respondent object to the hearing judge's conclusion that Respondent violated Rule 1.15(c). Petitioner and Respondent agree that because a violation of that rule was not charged, Respondent should not have been subject to a finding by the trial judge. The hearing judge concluded that the Respondent violated Rule 1.15(c) because he "did not remove earned fees in a timely manner from the trust account" as required by that rule. Clearly, Bar Counsel did not charge Respondent with violating Rule 1.15(c). In *In re Ruffalo*, 390 U.S. 544, 550, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117, 122 (1968), the Supreme Court held that an attorney is "entitled to procedural due process, which includes fair notice of the charge." (Citations omitted). The Court continued, stating that, " 'notice should be given to the attorney of the charges made and opportunity afforded him for explanation and defen[s]e.' " *In re Ruffalo*, 390 U.S. at 550, 88 S.Ct. at

1226, 20 L.Ed.2d at 122 (citations omitted). This Court has similarly held that an attorney may not be found guilty of violating a Rule of Professional Conduct unless that Rule is charged in the Petition For Disciplinary or Remedial Action. *See Attorney Grievance Comm'n v. Seiden,* 373 Md. 409, 419, 818 A.2d 1108, 1113 (2003) (sustaining Bar Counsel's exception to the hearing judge's findings where Petitioner did not charge the Respondent for violations of the MRPC) (citations omitted). Accordingly, we sustain Petitioner's and Respondent's exception to the hearing judge's conclusion that Respondent's conduct violated Rule 1.15(c).

## IV. SANCTION

Having concluded that Respondent violated Rules 1.5(c), 1.15(a), and 8.1(b), we must determine the proper sanction. Recently in *Mahone,* 398 Md. at 268–69, 920 A.2d at 464–65, we reaffirmed that

> [t]he purpose of discipline under the MRPC is not to punish the lawyer, but to protect the public and the public's confidence in the legal profession. We protect the public through sanctions against offending attorneys in two ways: through deterrence of the type of conduct which will not be tolerated, and by removing those unfit to continue in the practice of law from the rolls of those authorized to practice in this State. The public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed. The appropriate severity of the sanction depends upon the facts and circumstances of the case, taking account of any particular aggravating or mitigating factors.

(Citations and quotations omitted.)

As to the mitigation standards to which we ordinarily adhere, we have said:

> The mitigating factors listed in the ABA Standards include: absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional

problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Mahone*, 398 Md. at 269, 920 A.2d at 465 (citations omitted).

Petitioner contends that suspension is the appropriate sanction because Respondent's conduct demonstrated an "utter disregard of his obligation to appropriately maintain and reconcile his trust account for ... a long period of time...." In support of his recommendation for a sanction, Petitioner relies on our decisions in *Attorney Grievance Comm'n v. Sliffman*, 330 Md. 515, 625 A.2d 314 (1993) (involving numerous disciplinary rules violations stemming from the attorney's misrepresentations, commingling of client funds, inadequate recordkeeping, and improper dealings with his client, where the appropriate sanction was a one-year suspension considering the attorney's prior reprimand); *Attorney Grievance Comm'n v. Awuah*, 346 Md. 420, 697 A.2d 446 (1997) (involving negligent maintenance of client funds and recordkeeping, negligent commingling of client funds, general ineptness concerning the handling of the business aspects of the practice of law, where the appropriate sanction was an indefinite suspension with the right to reapply for admission after sixty days); *Attorney Grievance Comm'n v. Zuckerman*, 386 Md. 341, 872 A.2d 693 (2005) (concluding that the appropriate sanction, where there was a misappropriation of trust account funds based upon the lawyer's ineffectual accounting procedures and theft of funds by an employee, was an indefinite suspension with the right to reapply after thirty days); and *Attorney Grievance Comm'n v. Obi, supra* (holding that an attorney's failure to properly maintain and keep records pertaining to his escrow account, commingling his own funds in his attorney trust account and failure to fully cooperate with Bar Counsel's

investigation warranted a suspension for 30 days from the practice of law).

Respondent contends that a suspension is unwarranted and, further, that his "violations are less severe and less consequential than the violations in ... cases ... in which the sanction was as much as a reprimand." In support of his recommendation, Respondent cites several disciplinary cases that were resolved administratively, by consent of the attorney involved and the Commission, and not as a result of a hearing, before this Court, on the appropriate sanction. In addition he relies on our recent decision in *Mahone, supra.* Respondent contends that the attorney's conduct in *Mahone* "amounted to a pattern of disrupting court proceedings ... which constituted a direct contempt of court" and violated the rules of professional conduct. As suggested by Respondent, his misconduct was less severe, less consequential, and more thoroughly remediated than the misconduct in *Mahone;* thus, Respondent contends that the appropriate sanction, in this case, should be a reprimand.

We prefer not to resolve this matter in reliance upon cases that were not decided after a hearing before this Court or on the basis of the sanction imposed in *Mahone.* Our opinion in *Mahone* involved an attorney's contemptuous behavior in court and did not involve a violation of the Rules which are under consideration in this case. Therefore, for different reasons, we hold that the appropriate sanction in this case is a reprimand. *See Attorney Grievance Comm'n v. Tolar,* 357 Md. 569, 585, 745 A.2d 1045, 1054 (2000) (noting that a reprimand serves the purpose of protecting the public in the same manner as a short suspension); *Attorney Grievance Comm'n v. Wyatt,* 323 Md. 36, 38, 591 A.2d 467, 468 (1991) (finding that a reprimand is the appropriate sanction for a "single instance of gross neglect of a legal matter by a long-time practicing member of the Bar" and that a reprimand protects the public as well as a short suspension); *Attorney Grievance Comm'n v. Powell,* 328 Md. 276, 302, 614 A.2d 102, 115 (1992) (noting that "suspension or disbarment ... is

appropriate for lawyers who are grossly negligent," whereas "reprimand is appropriate for lawyers who fail to follow their established [accounting] procedures") (citations omitted).

The cases cited by Bar Counsel are all distinguishable from the present case and involved more egregious misconduct or actual harm to the clients involved. For example, in *Sliffman,* the attorney's misconduct involved misrepresentations of facts and the attorney sanctioned had a previous reprimand. In *Awuah,* the attorney never opened a client trust account and was generally inept in the handling of the business aspects of the practice of law. In *Zuckerman,* the case involved the misappropriation of trust account funds based upon the lawyer's ineffective accounting procedures and theft of funds by an employee. Lastly, in *Obi,* the attorney knowingly failed to respond to a lawful demand from Bar Counsel because the attorney did not believe a response was necessary.

In the present case, Respondent's misconduct was determined to be neither detrimental to his clients, nor intentional or motivated by fraud. He obtained a favorable outcome for his clients, his failure to communicate adequately with the Andrews at the time of settlement did not result in any injury to them, and commingling of his funds with those of his clients did not result in any misappropriation of client funds. Respondent failed to report, in a timely fashion, a portion of his income that remained in the escrow account. Although, Respondent had several telephone communications with Bar Counsel and attempted to comply with the document requests, his compliance was untimely. Ultimately, Respondent took various remedial measures and has since filed amended tax returns to correct his inaction.

■ Respondent's misconduct was not willful, but rather the result of his own disorganization and reliance on others to manage his accounts. He did not benefit in any way from his negligence. In fact, Respondent expended considerable sums of money to correct the mismanagement of his escrow accounts. In addition, we consider whether the attorney showed remorse for his misconduct and whether the conduct is likely

to be repeated and whether the attorney has a prior history of disciplinary matters. *Attorney Grievance Comm'n v. Hill,* 398 Md. 95, 103, 919 A.2d 1194, 1198 (2007). Respondent's remorse for his misconduct is sufficiently demonstrated through the extensive remedial action he took, including engaging an accounting firm, at a considerable expense, to reconcile his escrow accounts and also his hiring of an associate to set up and maintain a reliable accounting system. These remedial actions dramatically reduce the likelihood that the conduct will be repeated. Additionally, Respondent has no record of any prior disciplinary action.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT; INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST ROBERT A. SAPERO.