25 A.3d 165

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Jagjot Singh KHANDPUR.**

**Misc. Docket No. AG 3, Sept. Term, 2010.**

Court of Appeals of Maryland.

July 18, 2011.

Dolores O. Ridgell, Assistant Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

William C. Brennan, Jr., Esquire of Brennan, Sullivan, McKenna, LLP, Greenbelt, MD, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

GREENE, J.

Pursuant to Maryland Rule 16–715, the Attorney Grievance Commission of Maryland ("Petitioner"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action against Jagjot S. Khandpur ("Respondent"), charging him with professional misconduct arising out of his representation of Bhuwani S. Subedi in his application for asylum. Petitioner charged Respondent with violating Rules 1.3 (Diligence),[1] 1.4 (Communication),[2] 1.15 (Safekeeping Property),[3] 3.4(c) (Fair-

---

**1.** MRPC 1.3 provides:

A lawyer shall act with reasonable diligence and promptness in representing a client.

**2.** MRPC 1.4 provides:

(a) A lawyer shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
(2) keep the client reasonably informed about the status of the matter;
(3) promptly comply with reasonable requests for information; and

ness to Opposing Party and Counsel),[4] 8.1 (Bar Admission and Disciplinary Matters),[5] and 8.4(c) and (d) (Misconduct) [6] of the

(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

3.  MRPC 1.15 provides:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

(b) A lawyer may deposit the lawyer's own funds in a client trust account only as permitted by Rule 16-607 b.

(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

(e) When a lawyer in the course of representing a client is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall distribute promptly all portions of the property as to which the interests are not in dispute.

4.  MRPC 3.4(c) provides:

A lawyer shall not:

(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;

5.  MRPC 8.1 provides:

Maryland Rules of Professional Conduct ("MRPC"). In accordance with Maryland Rule 16–752(a),[7] we referred the matter to the Honorable Robert A. Greenberg, of the Circuit Court for Montgomery County, to conduct an evidentiary hearing and to render findings of fact and recommend conclusions of law. In response to our request, Judge Greenberg held an evidentiary hearing on September 20, 2010, and rendered the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Respondent was admitted to practice law in Maryland on June 11, 2001, and has since maintained a solo law practice in Montgomery County, Maryland. He was born, educated, and attended law school in India. In 1993, he was awarded an LLM by Howard University in Washington, D.C., and admitted to the District of Columbia Bar. He was staff counsel at an information technology company until he entered private practice in 1997. Since then he has been a sole practitioner,

---

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
(a) knowingly make a false statement or material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

6.  MRPC 8.4(c) and (d) provides:
    It is professional misconduct for a lawyer to:
    (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
    (d) engage in conduct that is prejudicial to the administration of justice.

7.  Maryland Rule 16–752(a) provides:
    (a) **Order.** Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing.

without support staff. He handles primarily immigration matters and typically has no more than ten active files at a time.

The hearing judge noted that Respondent "opened an Interest on Lawyers' Trust Account (IOLTA) at the Bank of America," in 2001. Until 2008, Respondent failed to retain monthly statements for this account and, for the period between 2006 and 2008, he did not identify which client or matter was the source of funds on his bank deposit records. He has since changed his practices to retain monthly statements and keep more detailed deposit records.

On or about February 14, 2006, Bhuwani Shanker Subedi, a native of Nepal, entered the United States. In June 2006 a friend of Respondent's, Mohan Thapa, referred Subedi to Respondent to handle Subedi's application for asylum. In early August, Respondent met with Thapa and Subedi, explained that the asylum application would need to be filed within one year of Subedi's arrival in the United States, and agreed to represent Subedi in preparing the written application and representing him at an asylum interview. Both Respondent and his client spoke Hindi and had no trouble communicating. On or about August 3, Respondent sent his client a letter relaying their agreement: Subedi would pay a fixed fee of $1,500, to be paid in two equal installments, and Respondent would represent Subedi in his application for asylum, culminating in an asylum interview with the Immigration and Naturalization Service (INS). If the matter ended up in immigration court, an additional fee would be negotiated.

Judge Greenberg found that Subedi made an initial $750 payment in cash "on a date uncertain," and that this payment was never deposited in Respondent's IOLTA. He found that Thapa provided the second $750 payment by check, which was deposited directly into Respondent's personal account on or about February 4, 2007. Although it was due by February 14, 2007—one year after Subedi's arrival in the United States— Respondent did not file his client's application for asylum until on or about March 27, 2007. Respondent testified that the delay was due to the client's failure to provide essential

information, but Judge Greenberg noted that no documentation or records were produced to support this claim. Immigration authorities returned the application as incomplete on June 4. Respondent resubmitted an amended application but it was denied and the INS commenced deportation proceedings. Subedi retained new counsel and filed this grievance. Because Subedi did not testify at the hearing, Judge Greenberg did not give any weight to his complaint in determining these facts. According to the hearing judge, he "based [his] findings solely on Respondent's testimony, admissions to Bar Counsel and its representatives, and the other exhibits admitted at trial."

On or about September 16, 2008, Respondent met with Petitioner's investigator, Marc O. Fiedler. Respondent told Fiedler that Subedi's payments had been deposited in Respondent's IOLTA until they were earned and agreed to provide financial records, which were not timely produced. On February 24, 2009, Respondent and Bar Counsel entered into a Conditional Diversion Agreement (CDA) under Maryland Rule 16–736, which was contingent on Respondent producing certain specific financial records to substantiate his story. Respondent provided copies of monthly bank account statements for his IOLTA, but no other documentation. When Bar Counsel informed Respondent that he had violated the CDA by failing to produce the required records, Respondent promised to get more records from his bank and provide them by May 26, 2009. On June 1, Respondent provided some additional records, but none of the records produced explained what happened to the fees paid by Subedi or Thapa. As a result, on November 18, 2009, Petitioner revoked the CDA and, subsequently, began these proceedings.

## CONCLUSIONS OF LAW

Judge Greenberg concluded that there was clear and convincing evidence that Respondent violated Maryland Rules of Professional Conduct 1.3 (Diligence), 1.15 (Safekeeping Property), and 8.4(d) (Misconduct). He found that Respondent violated Rule 1.3 by failing to file Subedi's asylum application

on time. Respondent violated Rule 1.15 by failing to keep proper records for his IOLTA, failing to fully account for either the original $750 cash payment or the subsequent $750 check, and failing to deposit advance fee payments in trust until they were earned. He violated Rule 8.4(d) by falsely stating to Petitioner's investigator and in the CDA that he had deposited the prepaid funds into his IOLTA, and by failing to produce complete records, in a timely manner, after a legitimate demand by Bar Counsel, to show the receipt and distribution of trust funds.

Judge Greenberg concluded that there was not clear and convincing evidence that Respondent had violated Rule 8.1 (Bar Admission and Disciplinary Matters) or Rule 8.4(c) because Respondent's false statements were "misinformed, not devious," and his delayed production of documents was "either through laziness or ineptitude," but not "deceitful." Bar Counsel announced at the Circuit Court hearing that it would not pursue its allegation that Respondent had violated Rule 1.4 (Communication). Judge Greenberg did not address the allegation in the petition that Rule 3.4(c) (Fairness to Opposing Party and Counsel) had been violated, and neither party filed an exception to this omission.

## STANDARD OF REVIEW

We explained in *Attorney Grievance v. Sapero*, 400 Md. 461, 478, 929 A.2d 483, 493 (2007):

> This Court has original and complete jurisdiction over attorney disciplinary proceedings. *Attorney Grievance Comm'n v. Cherry–Mahoi*, 388 Md. 124, 152, 879 A.2d 58, 76 (2005) (citations omitted). As noted in *Attorney Grievance Comm'n v. Mahone*, 398 Md. 257, 265–66, 920 A.2d 458, 463 (2007): "We accept a hearing judge's findings of fact unless we determine that they are clearly erroneous. *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006). As to the scope of our review, we take into consideration whether the findings of fact have been proven by the requisite standard of proof set

out in Rule 16–757(b). This Rule provides that Bar counsel has the burden of proving the averments of the petition by clear and convincing evidence, and the attorney who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter of mitigation or extenuation by a preponderance of the evidence. *Guida*, 391 Md. at 50–51, 891 A.2d at 1095 (citing Rule 16–757(b)). 'Weighing the credibility of witnesses and resolving any conflict in the evidence are tasks proper for the fact finder.' *State v. Stanley*, 351 Md. 733, 750, 720 A.2d 323, 331 (1998). With regard to the hearing judge's conclusions of law, our review is de novo. *Attorney Grievance Comm'n v. Harrington*, 367 Md. 36, 49, 785 A.2d 1260, 1267–68 (2001)."

## DISCUSSION

Bar Counsel filed an exception to Judge Greenberg's finding that Respondent did not violate MRPC 8.1(b) by failing to respond in a timely manner to Bar Counsel's requests for records. Respondent filed two exceptions to the hearing judge's findings of fact and two exceptions to the court's conclusions of law.

First, Respondent excepts to Judge Greenberg's finding that Respondent did not keep proper records for his IOLTA because the hearing judge did not note that monthly statements were available online. Second, Respondent objects to the hearing judge's finding that Subedi's first $750 payment was paid in cash on a "date uncertain," before the conclusion of the representation. Respondent maintains that the $750 check from Thapa was the first payment received, and that the second payment was not received until after the asylum interview. Respondent's third exception is to Judge Greenberg's conclusion that Respondent violated MRPC 1.3 (Diligence) by filing his client's asylum application more than a month late. Fourth, Respondent takes exception to Judge Greenberg's conclusion that Respondent violated MRPC 1.15 (Safekeeping Property) by receiving client funds and placing them into his personal account before they were earned.

### Violation of MRPC 8.1

MRPC 8.1(a) dictates that a lawyer, in connection with a disciplinary matter, shall not "knowingly make a false statement of material fact," and 8.1(b) requires that a lawyer shall not "knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority. . . ." Respondent did falsely state to Petitioner's investigator and in the CDA that the two $750 payments had been deposited into his IOLTA. Judge Greenberg, however, found that Respondent was credible when he testified that the misstatements were due to Respondent's lack of support staff, and having become "overwhelmed by the investigation." As a result, the hearing judge concluded that there was not clear and convincing evidence that Respondent knowingly mislead the Petitioner.

Petitioner notes, correctly, that "the Hearing judge did not address the aspect of MRPC 8.1 dealing with the failure to respond to the investigator's requests for records." On two separate occasions during the disciplinary process, Respondent failed to respond to Petitioner's lawful demands for information. First, Judge Greenberg found that, at the initial September 16, 2008 meeting between Respondent and Petitioner's investigator, Respondent "agreed to provide records to corroborate his contention [that the payments had been deposited into his Attorney Trust Account], but ultimately failed to do so in a timely manner."

Second, Judge Greenberg found that under the terms of the CDA, Respondent was required to provide specific records, namely, "monthly statements; cancelled checks; check register; information identifying funds received and disbursed in the Subedi matter; and any and all other records of deposits and disbursements involving the account." Initially, Respondent provided only monthly statements. After additional prodding from Bar Counsel, Respondent agreed to provide the remaining records by May 26, 2009. On June 1, he provided copies of some cancelled checks, but no other records. The court noted that "[t]hrough the present time, Respondent has

not provided copies of all IOLTA disbursements, or records of any transactions with Complainant, nor has he provided a satisfactory explanation as to why these records have not been produced."

Respondent essentially concedes that he failed to produce these records, but argues that this failure is excusable because the Petition for disciplinary or remedial action did not provide sufficient notice of the basis for the charges Respondent faced to constitute a "lawful demand for records" under Rule 8.1(b). Specifically, Respondent points out that "[w]hile the petition sets forth specific allegations of conduct followed by assertions of what rules were violated, it does not say which allegations support which assertions," and that Maryland Rule 16–758(c) [8] requires that the petition be "sufficiently clear and specific" to give Respondent notice of the charges against him.

Respondent's citation is incorrect because Rule 16–758 applies to the post-hearing phase of disciplinary proceedings, rather than to the initial investigation when the demands occurred. The language Respondent quotes is likely from Rule 16–751(c),[9] which governs the form of the petition for disciplinary or remedial action. But both of the demands for information at issue here, in the initial September 16 meeting and in the CDA, were in the course of investigating Subedi's original complaint, before the Petition was filed. As a result, whether or not the Petition was "clear and specific" can have no bearing on whether these demands were "lawful" or whether Respondent's failure to produce records was "knowing" under Rule 8.1(b).

---

**8.** Rule 16–758(c), "Post-hearing proceedings" provides:

(c) **Response.** Within 15 days after service of exceptions or recommendations, the adverse party may file a response.

**9.** Maryland Rule 16–751(c), "Petition for disciplinary or remedial action," provides:

(c) **Form of petition.** The petition shall be sufficiently clear and specific to inform the respondent of any professional misconduct charged and the basis of any allegation that the respondent is incapacitated and should be placed on inactive status.

■ In any event, this Court has held that an "assertion that there was no evidence that the materials requested by Bar Counsel were necessary to the investigation is immaterial, as Respondent has an obligation to provide Bar Counsel with any relevant material requested in the course of an investigation." *Attorney Grievance v. Obi,* 393 Md. 643, 654, 904 A.2d 422, 428–29 (2006) (citing Md. Rule 16–731(c)(1) ("Bar Counsel may demand that the attorney provide information and records that Bar Counsel deems appropriate and relevant to the investigation.")). As long as Bar Counsel's demand clearly indicates which records are being sought, there is no requirement that Bar Counsel explain how the records relate to the investigation.

■ A request for information by Bar Counsel does not have to come in any particular form in order to trigger the compliance requirements of MRPC 8.1. In *Attorney Grievance v. Fezell,* 361 Md. 234, 760 A.2d 1108 (2000), an attorney argued that he had not violated Rule 8.1 by failing to respond to letters from Bar Counsel requesting records because the letters did not contain the word "demand." We considered that argument "plainly frivolous," and held that the attorney had been "put on notice." *Fezell,* 361 Md. at 252, 760 A.2d at 1118.

In this case, the hearing judge found that Bar Counsel twice made clear and specific demands for financial records relating to Respondent's IOLTA and that neither all the documents, nor a satisfactory explanation for their absence, were ever produced. Because these findings provide clear and convincing evidence that Respondent violated MRPC 8.1(b) by "knowingly fail[ing] to respond to a lawful demand for information," Petitioner's exception is sustained.

### Online Access to Bank Records

Respondent excepts to Judge Greenberg's finding that "[t]ypically, the respondent did not retain monthly IOLTA statements from the bank, and for the period 2006–2008 did not identify the source of funds on deposit tickets he prepared for his IOLTA." Respondent does not contend that either of

these statements is untrue, but argues, essentially, that the failure to keep proper records was less severe than it sounded because the statements were available online, and Respondent reviewed them regularly and "was able to identify the source of funds deposited and was able to identify which fees were earned."

It is well established that, although we conduct an independent review of the complete record relating to a disputed finding, a hearing judge's factual findings are considered *prima facie* correct and will not be overruled unless they are clearly erroneous. *Attorney Grievance v. Harris,* 366 Md. 376, 388, 784 A.2d 516, 523 (2001). *See also, Attorney Grievance v. Sheridan,* 357 Md. 1, 17, 741 A.2d 1143, 1152 (1999); *Attorney Grievance v. Kemp,* 303 Md. 664, 674, 496 A.2d 672, 677 (1985). We have emphasized that "the hearing judge 'may elect to pick and choose which evidence to rely upon,'" *Harris,* 366 Md. at 388–89, 784 A.2d at 523 (quoting *Kemp,* 303 Md. at 675, 496 A.2d at 677), because the hearing judge "is in the best position to assess first hand a witness's credibility." *Harris,* 366 Md. at 389, 784 A.2d at 523 (quoting *Sheridan,* 357 Md. at 17, 741 A.2d at 1152).

Here, Respondent points only to his own testimony at the hearing to establish that the availability of online statements was part of his record-keeping procedure. Judge Greenberg found that "Respondent failed to maintain records for receipt and distribution of trust funds, as required by [MRPC] 1.15(a)." According to the judge's finding, "to this day, [Respondent] has not been able to identify what happened to the first $750 paid by [Subedi]." Although Respondent posits that he could access his account statements online, this contention overlooks Respondent's obligation to maintain records for receipt and distribution of trust funds in order to explain, verify, or corroborate his handling of client funds when requested by Bar Counsel to do so. The exception is overruled.

### When the Cash Payment was Received

Respondent's second exception is to Judge Greenberg's factual finding that Subedi "paid $750.00 in cash to Respon-

dent, on a date uncertain, which was not deposited into the IOLTA." Respondent asserts that Subedi's initial payment was in the form of a check, which was not deposited because it was drawn on insufficient funds. Respondent alleges that the first payment he actually received in the matter was Thapa's $750 check, which was deposited into Respondent's personal account on February 4, 2007—after he had done at least some work on the matter—and that Respondent did not receive the remaining $750 payment until after he had completed the asylum interview, and the representation, in September 2007.

But this assertion is undermined by several facts in the record. Judge Greenberg, in his determinations, refers to "the court's finding that Respondent was paid $750.00 cash at the time of the first meeting with [Subedi], for which there is no accounting." The retainer agreement between the Respondent and Subedi required that the fee be paid in two installments *before* Respondent attended an "asylum interview" for the client. It is undisputed that Respondent stated to Petitioner's investigator that the first $750 payment was in cash and the second was a check. And the CDA signed by Respondent in February of 2009 stated: "Respondent was paid $1,500 as a prepaid fee for services to be provided."

Judge Greenberg does not mention Respondent's testimony that Subedi's initial payment was a bounced check. He must not have found this testimony to be credible, in light of the absence of any supporting documentation (such as a copy of the check) and Respondent's prior statements to Petitioner's investigator and in the CDA that the initial payment was made in cash. There is no evidence supporting Respondent's testimony and considerable evidence contradicting it, so Judge Greenberg's finding that the $750 cash payment was made before the representation was completed was not clearly erroneous. Therefore, Respondent's exception is overruled.

### Rule 1.3—Diligence

MRPC 1.3 requires that "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Respondent's third exception is to the hearing judge's conclu-

sion that Respondent violated MRPC 1.3 by filing Subedi's application for asylum more than a month late. While he does not dispute that the application was filed late, Respondent argues that there was not clear and convincing evidence that the filing was late because of his lack of diligence.

At the disciplinary hearing in the Circuit Court, Respondent contended that Subedi's asylum application was not filed on time because Subedi was tardy in providing essential information that Respondent needed to complete the application. Judge Greenberg did not find this testimony to be credible, finding that

> [b]esides Respondent's contention that he had several conversations with Complainant reminding him that this information was overdue, there are no memoranda, notes, or documents supporting this assertion. No correspondence of any kind was ever sent by Respondent to Complainant, other than the August 3 letter that served as the legal services agreement.

Respondent also argues that, regardless of his own testimony, Petitioner has not met its burden of establishing clear and convincing evidence that Respondent was not reasonably diligent merely by proving that the filing was late, without producing some evidence of how Respondent's lack of diligence caused its lateness. Petitioner responds by pointing to Judge Greenberg's finding that Subedi's application was ultimately denied "not because information was lacking, but because it was tardy." Judge Greenberg found that the application that was ultimately submitted did not even attempt to provide an explanation beyond "yes" to answer the question "Are you filing the application more than one year after your last arrival in the United States?" He also found that the application, which was ultimately submitted in March, was returned as incomplete, but that Respondent was allowed to resubmit a supplemented application, apparently without prejudice.

It was not clearly erroneous for the hearing judge to conclude that because a late application is grounds for rejec-

tion, while an incomplete application can be supplemented later, a reasonably diligent attorney would have submitted as complete an application as possible before the deadline regardless of whether the attorney were missing information from his or her client. At absolute minimum, Respondent should have made some attempt to explain to the immigration authorities why the application was late. Because he failed to take either of these steps, and the hearing judge's conclusions are not clearly erroneous, Respondent's exception is overruled.

### Rule 1.15(c)—Safekeeping Property

█ Respondent concedes that he violated MRPC 1.15(a) by failing to keep adequate records, but takes exception to the hearing judge's conclusion that Respondent violated MRPC 1.15(c) by failing to deposit the unearned portion of each $750 payment into his IOLTA. Rule 1.15(c) requires that "a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred." Judge Greenberg found that the entire fee was paid before the representation was completed, and concluded that at least some portion of the fee "should have been in Respondent's IOLTA until the asylum interview was conducted."

Respondent argues that the entire fee was earned when it was received, so he was not required to place any of it in his IOLTA. First, Respondent suggests that we sustain his second factual exception and conclude that Subedi's $750 cash payment was made after the representation was concluded, rather than "at the time of the first meeting with Complainant." Second, Respondent argues that Thapa's $750 check was earned when it was received, six months into the representation.

Our cases hold that fee payments, even if a flat fee, must be placed in escrow upon receipt if the work has not yet been performed at the time of payment. *See Attorney Grievance v. Guida,* 391 Md. 33, 53, 891 A.2d 1085, 1097 (2006). As explained above, we have overruled Respondent's exception to

Judge Greenberg's finding that the cash payment was made at the beginning of the representation. The hearing judge did not believe that Respondent could have performed substantial work on the matter, entitling him to receive payment of half of the total fee by the time this payment was made. And, as we accept the hearing judge's conclusion that the cash payment came first, Thapa's $750 check was the second payment, completing Respondent's fee. At the time it was received, Respondent had not yet filed Subedi's asylum application or attended his interview. Accordingly the entire fee was not yet earned.

Even if Thapa's check had been the first payment, Judge Greenberg found Respondent's "time estimate to be greatly exaggerated." The hearing judge emphasized that Respondent did not begin to argue that the fees were properly earned before they were received until after he had retained counsel in the present matter. Respondent produced no timesheets or any other documentation to demonstrate how much work he had done on the matter; hence, there is no reason to question Judge Greenberg's assessment of Respondent's credibility.

Because we accept Judge Greenberg's findings that the $750 cash payment was delivered in the beginning of the representation, but was never deposited into Respondent's Attorney Trust Account, and at least some portion of Thapa's $750 check was unearned when it was deposited into Respondent's personal account, there is ample evidence to support the conclusion that Respondent violated Rule 1.15(c). We overrule Respondent's fourth exception.

## SANCTION

"The purpose of attorney disciplinary proceedings is to protect the public and not to punish the erring attorney." *Attorney Grievance v. Usiak,* 418 Md. 667, 689, 18 A.3d 1, 14 (2011) (citing *Attorney Grievance v. Mahone,* 398 Md. 257, 268, 920 A.2d 458, 464–65 (2007); *Attorney Grievance v. Kinnane,* 390 Md. 324, 339, 888 A.2d 1178, 1187 (2005)). Sanctions protect the public when they deter future offending

conduct and remove "those unfit to continue in the practice of law from the rolls of those authorized to practice in this State." *Mahone,* 398 Md. at 268–69, 920 A.2d at 465 (quoting *Attorney Grievance v. Lee,* 393 Md. 546, 563, 903 A.2d 895, 905–906 (2006)). Sanctions should be "commensurate with the nature and gravity of the violations and the intent with which they were committed," taking into account the particular circumstances of each case and any aggravating or mitigating factors. *Id. See also, Attorney Grievance v. Stein,* 373 Md. 531, 533, 819 A.2d 372, 375 (2003). In *Attorney Grievance v. DiCicco,* 369 Md. 662, 686, 802 A.2d 1014, 1027 (2002) (quoting *Attorney Grievance Comm'n v. Garfield,* 369 Md. 85, 98, 797 A.2d 757, 764 (2002)), we said:

> The public interest is served when this Court imposes a sanction which demonstrates to members of this legal profession the type of conduct that will not be tolerated. By imposing such a sanction, this Court fulfils its responsibility to insist upon the maintenance of the integrity of the Bar and to prevent the transgression of an individual lawyer from bringing its image into disrepute. Therefore, the public interest is served when sanctions designed to effect general and specific deterrence are imposed on an attorney who violates disciplinary rules.

In the present case, Respondent has violated Rules 1.3, 1.15(a) and (c), 8.1(b), and 8.4(d). He has failed to represent his client with reasonable diligence, failed to keep proper records for his Attorney Trust Account and properly hold client payments in trust until earned, and frustrated Bar Counsel's investigation by carelessly making false statements and knowingly failing to produce documents demanded by Bar Counsel. These failures, as determined by the hearing judge, were the result of respondent's "laziness or ineptitude," rather than an intent to deceive. Our task is to determine the proper sanction for an attorney's wrongdoing in accordance with Md. Rule 16–759(c).[10] Petitioner recommends that this Court sus-

---

10. Md. Rule 16–759(c)—Disposition—provides:

pend Respondent indefinitely. Respondent acknowledges that he has committed some wrongdoing, but recommends that we impose a reprimand. An indefinite suspension from the practice of law is the appropriate sanction to issue in this case.

To support its recommendation for an indefinite suspension, Petitioner analogizes this case to *Attorney Grievance v. McCulloch*, 397 Md. 674, 687–689, 919 A.2d 660, 667–69 (2007). In that case, an attorney was suspended indefinitely for violating Rules 1.4(a)(3), 1.15(a), 1.16(d), and 8.4(b), (c) and (d) by depositing an unearned retainer directly into her operating account, spending it, and, after her client discharged her, failing to promptly refund the unearned fee or respond to numerous communications from her client. Bar Counsel and the Commission recommended disbarment, but we determined that McCulloch's misconduct was mitigated because she accepted responsibility for her actions, showed remorse, had no prior disciplinary history, and the hearing judge's findings as to McCulloch's level of culpability were ambiguous. *See McCulloch*, 397 Md. at 688–89, 919 A.2d at 668 (finding ambiguity where the hearing judge found, on one hand, "that the respondent's conduct violated each of the subsections of Rule 8.4 . . . ," and referred to "the respondent's spending of the unearned portion of the retainer as 'basic misappropriation,'" and, on the other hand, the hearing judge found that "these actions [did not] result[ ] from the requisite criminal intent to constitute theft"). In the present case, Petitioner acknowledges that Respondent's misconduct was less egregious than McCulloch's, but argues that because Respondent violated Rule 8.1 by failing to produce records for Bar Counsel, and that this finding was not a component of McCulloch's charges, the same sanction is appropriate. Respondent counters this argument by pointing to language in the *McCulloch* opinion which indicates that McCulloch "fail[ed] to answer Bar

---

(c) **Disposition.**—The Court of Appeals may order (1) disbarment, (2) suspension, (3) reprimand, (4) inactive status, (5) dismissal of the disciplinary or remedial action, or (6) a remand for further proceedings.

Counsel's request for information about this matter for almost five months," *McCulloch,* 397 Md. at 687, 919 A.2d at 668.

The conduct in *McCulloch* was perhaps more egregious than in the present case because McCulloch's failure to appropriately keep client funds in trust was found to be a violation of Rule 8.4(c), "conduct involving dishonesty, fraud, deceit or misrepresentation," however, as noted above, it was determined that McCulloch did not possess the requisite criminal intent to constitute the crime of Theft. In the case at bar, Respondent's violation of Rule 8.1 was found to be a result of his carelessness in keeping and producing records, managing his accounts, and responding to Petitioner's investigation. By finding that Respondent did not violate Rule 8.4(c), the hearing judge found that Respondent's conduct did not amount to dishonest or fraudulent behavior.

Petitioner also argues that this case resembles *Attorney Grievance v. Lawson,* 401 Md. 536, 579, 581–86, 933 A.2d 842, 867, 869–71 (2007), in which we imposed a sanction of an indefinite suspension with the right to reapply after one year for an attorney's violation of Rules 1.4(a), 1.5, 1.15, 1.16(d), 8.4(c) and (d), and Md. Rules 16–604 and 16–609. Although that attorney was unremorseful and uncooperative throughout the disciplinary process, we concluded that his relative youth and inexperience, along with the lack of any prior disciplinary record, warranted a less severe sanction than disbarment. Again, that was a case involving a violation of Rule 8.4(c).

Finally, Petitioner cites to *Attorney Grievance v. Webster,* 402 Md. 448, 473–74, 937 A.2d 161, 175–76 (2007) and *Attorney Grievance v. James,* 385 Md. 637, 665–66, 870 A.2d 229, 246 (2005), in which attorneys were disbarred for mishandling client funds. But, in those cases, we concluded that the violations unequivocally amounted to intentional theft of client funds. In the present case, however, the hearing judge did not find that Respondent intentionally or knowingly violated his client's trust, nor did the hearing judge make any finding with regard Respondent's level of intent with regard to his handling of trust funds. *See Attorney Griev. Comm. v. Drew,*

341 Md. 139, 154, 669 A.2d 1344, 1351 (1996) (involving a case where we imposed a suspension where an attorney failed to safe keep property in the attorney's trust account, absent clear and convincing evidence to support intentional misappropriation); *Attorney Grievance v. Maignan,* 390 Md. 287, 296–97, 888 A.2d 344, 349 (2005) (holding that an indefinite suspension was the appropriate sanction where evidence in the record showed that the attorney spent funds that belonged to his client, but Bar Counsel did not argue that the misappropriation was intentional, but did argue that the attorney's failure to maintain client funds in a proper trust account was also a violation of MRPC 1.15(a) and (b) and 8.4(d)).

In the present case, in an effort to further investigate allegations of attorney misconduct, Bar Counsel directed Respondent to account for and show that he had properly safeguarded funds he initially claimed to have deposited into his attorney trust account. In response to that request and in violation of the Conditional Diversion Agreement entered into with Bar Counsel, Respondent failed to establish that he had made the deposits into the trust account. Bar Counsel did not argue, however, that Respondent's misappropriation of client funds was intentional or knowing. Similarly, the hearing judge did not find that Respondent's mishandling of the advance retainer was intentional or knowing.

As to Respondent's conduct in failing to produce records essential to Bar Counsel's investigation, the hearing judge did not characterize Respondent's conduct as intentional or deceitful, but assessed that Respondent's conduct was the result of "laziness or ineptitude." In Bar Counsel's request for this Court to impose a sanction, he concedes that the hearing judge "was not willing to characterize Respondent's conduct as deceitful by clear and convincing evidence." Bar Counsel, however, points to the fact that the hearing judge found Respondent's response, to Bar Counsel's legitimate demands in connection with the investigation and Conditional Diversion Agreement, was "unjustified and inexcusable, and prejudicial to the thorough and orderly investigation contemplated" by

the attorney disciplinary rules and in violation of MRPC 8.4(d).

Respondent, arguing for a reprimand, relies upon *Attorney Grievance v. Ugwuonye*, 405 Md. 351, 952 A.2d 226 (2008), where we imposed a 90 day suspension as a sanction for an attorney's misconduct. Respondent argues that his misconduct was less severe than Ugwuonye's. In that case, the hearing judge found that Ugwuonye had violated Rules 1.1, 1.3, 1.4, and 3.4(d) with respect to one client, and Rules 1.5, 1.15, and 1.16(d) with respect to another. Although the violations were quite serious, we found that Ugwuonye's misconduct was mitigated because he "did not act with dishonest, deceitful, or fraudulent intent, lack[ed] a prior disciplinary record, made after-the-fact efforts to ameliorate the circumstances that led to a number of his violations of the Maryland Rules of Professional Conduct and was cooperative with Bar Counsel throughout the investigation...." *Ugwuonye*, 405 Md. at 375, 952 A.2d at 240. Here, to the contrary, Respondent failed to produce records essential to Bar Counsel's investigation, mislead Bar Counsel, albeit not intentionally, about the existence of those records, and violated MRPC 8.4(d).

Respondent also points to *In re Mance*, 980 A.2d 1196, 1208–09 (D.C.2009), where an attorney was given a "public censure" for claiming prepaid fees before they were earned, even though the attorney had already been disciplined on three prior occasions. But the attorney's conduct in that case was not compounded by a lack of diligence and an uncooperative response to Bar Counsel's investigation, as it was here.

It is most significant, in the present case, that Judge Greenberg did not find that Respondent was acting from a dishonest motive. Although Judge Greenberg did not make an explicit finding regarding Respondent's intent, i.e., whether Respondent's misappropriation of client funds was intentional, knowing or negligent, the judge did find that "Respondent's acts and omissions during the investigation were not intentional" and did not violate MRPC 8.4(c), which involves "dishones-

ty, fraud, deceit or misrepresentation." Moreover, Petitioner did not except to the hearing judge's findings with regard to MRPC 8.4(c). In addition, in the Proposed Findings of Fact and Conclusions of Law with regard to MRPC 8.4(c) that Petitioner submitted to the hearing judge, Petitioner did not argue that Respondent's violations of MRPC 1.15 provided a basis for a finding of intentional or knowing misappropriation or dishonesty; Petitioner relied, instead, exclusively on Respondent's false statements to Bar Counsel's investigator and in the CDA to make the case against Respondent.

Further, in discussing why he did not feel that Respondent had violated MRPC 8. 1, Judge Greenberg noted that "there is abundant evidence that Respondent's bookkeeping and accounting methods were slipshod." Judge Greenberg elaborated:

> It was the sense of the court, which had the opportunity to listen to Respondent's explanation, that he—a sole practitioner without any support staff, unrepresented by knowledgeable counsel—was a bit overwhelmed by the investigation. *His sloppy record-keeping, including the maintenance of the case file itself, certainly was of no assistance in trying to reconstruct what had become of the Subedi fee.* Having had this opportunity to observe his demeanor at trial, the court cannot find by clear and convincing evidence that there was a violation of this rule, but finds his statements to Bar Counsel and its investigator were misinformed, not devious. (Emphasis added.)

From the hearing judge's conclusion that Respondent had violated MRPC 8.4(d), it is clear that Judge Greenberg's focus was on Respondent's failure to respond, in a timely manner, to Bar Counsel's requests for essential records and the impact of that misconduct on the disciplinary process. This focus is also evident in the hearing judge's assessment of Respondent's character when Judge Greenberg pointed out that "Respondent acknowledged at trial that he had the IOLTA bank statements in his garage, records which he could have produced at any time." Also, the hearing judge mentioned that, "After counsel was retained, many of the other requested

records did indeed appear, albeit too late to prevent charges in this case." In that regard, ultimately, the hearing judge concluded:

> *While the court has not been willing to characterize Respondent's conduct as deceitful by clear and convincing evidence,* the 'day late and dollar short' manner in which response was made to legitimate demands by Bar Counsel was unjustified and inexcusable, and prejudicial to ... thorough and orderly investigation.

We have held that "[w]here there is no finding of intentional misappropriation ... and where the misconduct did not result in financial loss to any of the respondent's clients, an indefinite suspension ordinarily is the appropriate sanction." *Attorney Grievance v. DiCicco,* 369 Md. 662, 687, 802 A.2d 1014, 1028 (2002); *Attorney Grievance v. Sperling,* 380 Md. 180, 844 A.2d 397, 399 (2004) (imposing an indefinite suspension with the right to reapply for admission after 90 days where an attorney "unintentionally and knowingly" violated MRPC 1. 15, and 8.4(c) and had been previously disciplined); *Attorney Grievance v. Seiden,* 373 Md. 409, 818 A.2d 1108 (2003) (imposing an indefinite suspension with the right to reapply after 30 days where an attorney unintentionally misappropriated client funds and violated MRPC 1.1, 1.15(b), and 8.4(a) and (d)).

In *Attorney Grievance v. Goff,* 399 Md. 1, 922 A.2d 554 (2007), we imposed a sanction of indefinite suspension with the right to apply for readmission after 60 days. Although the hearing judge found that the attorney had violated MRPC 1.1, 1.3, 1.15(a) and (d), 8.1(b), 8.4(d) and 10–306 of the Business Occupations and Professions Article, the hearing judge declined to find by clear and convincing evidence violations of MRPC 5.3(b), 8.1(a), 8.4(c) and Maryland Rule 16–609.

In *Attorney Griev. Comm'n. v. Kramer,* 325 Md. 39, 51, 599 A.2d 100, 106–107 (1991), a case involving an attorney's inattention and sloppiness in managing his attorney trust account, we imposed an indefinite suspension, as a sanction for the attorney's misconduct, with the right to reapply for admission to the Bar after one year. In that case, the attorney failed to

maintain any records or to render any accounting of funds that were in the attorney trust account. In addition, the attorney did not know what became of the money that had been deposited in the account. We said, "coupled with his cavalier attitude about the missing records, [Kramer's misappropriation of client funds] is at least gross negligence and unacceptable for a member of the bar."

Although Judge Greenberg found that Respondent has taken steps to correct his problematic record-keeping, "and now retains monthly statements, while preparing more detailed deposit tickets[,]" his prior practice of failing to retain monthly IOLTA statements from the bank for over two years and failure to identify the sources of funds on deposit tickets he prepared for his trust account, in our view, cannot be overlooked. Therefore, consistent with our dispositions in *Goff, McCulloch, DiCicco,* and other cases involving unintentional misappropriations *and* out of concern for the protection of the public as a result of Respondent's inattention to the management of his attorney trust account and the mishandling of client funds in this case, we are persuaded that Petitioner's recommendation of an indefinite suspension is the appropriate sanction.

In the present case, the hearing judge believed that the advanced fee of $1,500 was ultimately earned, even though some part of the fee was deposited in Respondent's personal account prematurely. Although the hearing judge did not comment upon Respondent's state of mind as to his deposits of client funds into his personal account, at the very least, the evidence supports a finding that Respondent was careless in handling his attorney trust account and responding to Bar Counsel's demands for documents and an accounting. In addition to the safekeeping violation, Respondent has failed to diligently represent his client and failed to respond to a lawful demand for information from Bar Counsel. As we said in *Attorney Grievance v. Fezell,* 361 Md. 234, 255, 760 A.2d 1108, 1119 (2000):

The practice of law carries with it special responsibilities of self-regulation, and attorney cooperation with disciplinary authorities is of the utmost importance to the success of the process and the integrity of the profession.

Accordingly, Respondent is suspended indefinitely from the practice of law in this State, effective thirty days from the date of the filing of this opinion. He may apply for re-admission 60 days after the effective date of his suspension.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRAN-SCRIPTS, PURSUANT TO MARYLAND RULE 16–715(C), FOR WHICH SUM JUDGMENT IS ENTERED IN FA-VOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST JAGJOT S. KHANDPUR.**

HARRELL and ADKINS, JJ., Concur.

HARRELL, J., Concurring, in which ADKINS, J., joins.

Although I join the Court's judgment and opinion in the present case, I think it worth noting the context of how this case was presented to the hearing judge and this Court, which limits the precedential value of the case. I hope thereby not to see this case offered in the future as an authority for some purpose other than for what it holds.

The misappropriation of client funds "is a most egregious violation," *Attorney Grievance Comm'n v. Glenn*, 341 Md. 448, 489, 671 A.2d 463, 483 (1996), and, if intentional, "ordinarily will result in disbarment in the absence of compelling extenu-ating circumstances justifying a lesser sanction." *Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 406, 773 A.2d 463, 480 (2001). Negligent misappropriation, on the other hand, does not usually result in disbarment, but is more often met with an indefinite suspension, frequently with a right to reapply for reinstatement after a specified period of time.

Because of the way that Bar Counsel pursued and argued the violations charged in the present case, there was no need

for the hearing judge (or this Court) to determine conclusively for purposes of MRPC 1.15 whether Khandpur's misappropriation (i.e., depositing the $750.00 check in his personal bank account) was intentional or negligent. This is so because Bar Counsel did not assert that the misconduct upon which the MRPC 1.15 violation was predicated was the relevant misconduct for purposes of determining whether Khandpur violated MRPC 8.4(c). Rather, Bar Counsel argued that Khandpur's misconduct with regard to the charge of violation of MRPC 8.1 supported the 8.4(c) charge. As the Court's opinion points out, the hearing judge rejected Bar Counsel's discriminating argument with respect to MRPC 8.4(c), finding that the MRPC 8.1 misconduct was negligent and not intentional. Majority op. at 7, 25 A.3d at 169.

Had Bar Counsel contended that Khandpur's MRPC 1.15 misconduct supported the 8.4(c) charge, I would have argued strenuously with my colleagues to remand the case to the hearing judge to determine explicitly whether Khandpur's misconduct under MRPC 1.15 was intentional or negligent, as such a finding would be integral in addressing the MRPC 8.4(c) charge and the appropriate sanction. Indeed, the Court's opinion concedes that the hearing judge did not find or conclude that Khandpur's misconduct under MRPC 1.15 was intentional or negligent. *See* Majority op. at 17, 25 A.3d at 174–75 ("[T]he hearing judge did not ... make any finding with regard [to] Respondent's level of intent with regard to his handling of trust funds."). As it is, the Court's opinion and sanction is appropriate for this case, as it was presented and argued to the hearing judge and this Court.

Judge ADKINS authorizes me to state that she joins in the views expressed in this concurring opinion.