*Attorney Grievance Commission of Maryland v. Daun Robert Weiers*, Misc. Docket AG No. 10, September Term, 2013, Opinion by Greene, J.

ATTORNEY DISCIPLINE – Attorney's failure to remove earned fees from his trust account for a period of one year, as well as his reluctant and incomplete cooperation with Bar Counsel during the course of an investigation, constitute violations of MLRPC 1.15(a) and 8.1(b), as well as Maryland Rule 16-607, and warrants the sanction of reprimand.

Circuit Court for Prince George's County
Case No. CAE13-13555
Argued: September 4, 2014

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 10

September Term, 2013
_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

DAUN ROBERT WEIERS
_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.
_____

Opinion by Greene, J.
_____

Filed: October 22, 2014

The Attorney Grievance Commission of Maryland ("Petitioner"), acting pursuant to Maryland Rule 16-751(a), filed a "Petition for Disciplinary or Remedial Action" against Daun Robert Weiers ("Respondent" or "Weiers") on April 15, 2013. Petitioner charged Respondent–admitted to the Bar of this Court on December 14, 1973–with violations of Maryland Lawyers' Rules of Professional Conduct (MLRPC) 1.1 (Competence),[1] 1.15(a) and (c) (Safekeeping Property),[2] 1.5(a) (Fees),[3] 8.1(b) (Bar Admission and Disciplinary Matters),[4]

---

[1] Under MLRPC 1.1: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

[2] MLRPC 1.15, as relevant to this case, provides:

> (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.
>
> * * * *
>
> (c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

[3] Pursuant to MLRPC 1.5(a):

> (a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(continued...)

and 8.4(d) (Misconduct),[5] and Maryland Rules 16-606.1 (Attorney Trust Account Record-

---

[3](...continued)

    (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

    (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

    (3) the fee customarily charged in the locality for similar legal services;

    (4) the amount involved and the results obtained;

    (5) the time limitations imposed by the client or by the circumstances;

    (6) the nature and length of the professional relationship with the client;

    (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

    (8) whether the fee is fixed or contingent.

[4]  MLRPC 8.1 provides in pertinent part:

    [A] lawyer . . . in connection with a disciplinary matter, shall not:

* * * *

    (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

[5]  MLRPC 8.4 provides in pertinent part: "It is professional misconduct for a lawyer to: . . . (d) engage in conduct that is prejudicial to the administration of justice[.]"

Keeping)[6] and 16-607 (Commingling of Funds).[7] The alleged violations stem from Mr.

---

[6] Maryland Rule 16-606.1 provides:

(a) **Creation of records.** The following records shall be created and maintained for the receipt and disbursement of funds of clients or of third persons:

(1) Attorney trust account identification. An identification of all attorney trust accounts maintained, including the name of the financial institution, account number, account name, date the account was opened, date the account was closed, and an agreement with the financial institution establishing each account and its interest-bearing nature.

(2) Deposits and disbursements. A record for each account that chronologically shows all deposits and disbursements, as follows:

(A) for each deposit, a record made at or near the time of the deposit that shows (i) the date of the deposit, (ii) the amount, (iii) the identity of the client or third person for whom the funds were deposited, and (iv) the purpose of the deposit;

(B) for each disbursement, including a disbursement made by electronic transfer, a record made at or near the time of disbursement that shows (i) the date of the disbursement, (ii) the amount, (iii) the payee, (iv) the identity of the client or third person for whom the disbursement was made (if not the payee), and (v) the purpose of the disbursement;

(C) for each disbursement made by electronic transfer, a written memorandum authorizing the transaction and identifying the attorney responsible for the transaction.

(3) Client matter records. A record for each client matter in which the attorney receives funds in trust, as follows:

(A) for each attorney trust account transaction, a record that shows (i) the date of the deposit or disbursement; (ii) the amount of the deposit or disbursement; (iii) the purpose for which the funds are intended; (iv) for a disbursement, the payee and the check number or other payment identification; and (v) the

(continued...)

3

        balance of funds remaining in the account in connection with the matter; and

        (B) an identification of the person to whom the unused portion of a fee or expense deposit is to be returned whenever it is to be returned to a person other than the client.

    (4) Record of funds of the attorney. A record that identifies the funds of the attorney held in each attorney trust account as permitted by Rule 16-607 b.

    (b) **Monthly reconciliation.** An attorney shall cause to be created a monthly reconciliation of all attorney trust account records, client matter records, records of funds of the attorney held in an attorney trust account as permitted by Rule 16-607 b, and the adjusted month-end financial institution statement balance. The adjusted month-end financial institution statement balance is computed by adding subsequent deposits to and subtracting subsequent disbursements from the financial institution's month-end statement balance.

    (c) **Electronic records.** Whenever the records required by this Rule are created or maintained using electronic means, there must be an ability to print a paper copy of the records upon a reasonable request to do so.

    (d) **Records to be maintained.** Financial institution month-end statements, any canceled checks or copies of canceled checks provided with a financial institution month-end statement, duplicate deposit slips or deposit receipts generated by the financial institution, and records created in accordance with section (a) of this Rule shall be maintained for a period of at least five years after the date the record was created.

[7] Maryland Rule 16-607 provides:

        a. **General prohibition.** An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16-604 or permitted to be so deposited by section b. of this Rule.

        b. **Exceptions.** 1. An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service charges, or minimum balance required by the financial institution to open or maintain the account, including those fees that cannot

Weiers's (1) admitted failure to keep time records, (2) payment to himself from the Crescendo Realty, LLC retainer without obtaining the consent of his client, Mr. Hulamm, (3) typographical error on his trust ledger, (4) failure to withdraw the earned remainder of his retainer within a reasonable amount of time, and (5) reluctant, begrudging cooperation with Bar Counsel's lawful requests during the course of his investigation.

## I.    Findings of Fact and Conclusions of Law

This Court referred the matter to Judge Cathy H. Serrette of the Circuit Court for Prince George's County for an evidentiary hearing and to issue findings of fact and conclusions of law pursuant to Md. Rule 16-757. Following a hearing on September 17, 2013, Judge Serrette issued Findings of Fact and Conclusions of Law, in which she determined that Mr. Weiers had violated MLRPC 1.15(a) and 8.1(b), as well as Maryland

---

[7](...continued)
> be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to Rule 16-610 b 1 (D), or (B) enter into an agreement with the financial institution to have any fees or charges deducted from an operating account maintained by the attorney or law firm. The attorney or law firm may deposit into an attorney trust account any funds expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client.
>
> 2. An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.
>
> 3. Funds of a client or beneficial owner may be pooled and commingled in an attorney trust account with the funds held for other clients or beneficial owners.

Rule 16-607. In reaching this determination, Judge Serrette made the following findings:

### Findings of Fact

Respondent attended Carnegie Mellon University for his undergraduate studies and the University of Maryland School of Law to study law. He was admitted to practice in Maryland in 1973 and maintains a sole practice in Leonardtown, Maryland. In 2009, his main areas of practice included general civil law, criminal law, and domestic relations. Currently, he is practicing on a limited basis.

On or about January 7, 2009, Van Hulamm hired Respondent on behalf of Crescendo Realty, LLC, Mr. Hulamm's company, to provide legal services related to the removal of a fence on neighboring property, which blocked access to a parking lot used by businesses renting space from Crescendo Realty, LLC. Respondent and Mr. Hulamm orally agreed that Crescendo Realty, LLC, would pay a non-refundable retainer fee of $1,000.00, with excess work to be billed at the rate of $150.00 per hour, plus $30.00 per letter and telephone call. Respondent immediately deposited the retainer fee into his client trust account.

The level of communication between Respondent and the client during the course of the representation was disputed. Mr. Hulamm averred that he did not hear from or again meet with Respondent until 2010, when he alerted Respondent to the fact that the fence had been removed by a third party. Respondent testified that Mr. Hulamm frequently called and visited the office throughout 2009, sometimes casually and sometimes to discuss legal matters. Respondent also produced a September 8, 2009 e-mail from Mr. Hulamm seeking legal advice regarding a complaint that Mr. Hulamm had filed with the Circuit Court. Respondent's recitation of the contact between Mr. Hulamm and Respondent is credited.

On or about January 27, 2009, Respondent wrote a check to himself for $300.00 from his attorney trust account. The memo of the check read: "Earned Fee–Tighe/Crescendo." On or about March 13, 2009, Respondent wrote a check to himself for $300.00 from the trust account, with the check memo reading: "Earned Fee–Crescendo/Perrone." On March 18, 2010, Respondent withdrew $700.00 from the trust account. The check memo read: "Fee–Crescendo Realty."

Petitioner mistakenly alleged that Respondent paid himself $1,300.00 when he had only deposited $1,000.00 on behalf of Hulamm/Crescendo Realty, LLC. Petitioner's confusion arose from the fact that, as indicated on the memos, the January 27, 2009, and March 13, 2009 checks covered

6

payments from more than one client.

Pursuant to the retainer agreement, Respondent researched various options for removal of the fence obstructing access to Hulamm/Crescendo Realty's parking lot. None of the options researched proved favorable to Mr. Hulamm's case.

In early 2010, the fence was removed. Mr. Hulamm advised Respondent and asked for a refund of the retainer. On November 17 and 21, 2011, Mr. Hulamm left notes for Respondent seeking a refund. Mr. Hulamm next reached out to Mr. Slade, a mutual friend who had introduced Mr. Hulamm to Respondent. Mr. Slade spoke with Respondent, who agreed to return $500.00 of the retainer fee, as an alternative to "having [Mr. Hulamm] pestering me and bad mouthing me all over town." Mr. Hulamm sent an email to Respondent on or about January 11, 2012, confirming the agreement. He added that should the $500.00 not be received by January 17, 2012, Mr. Hulamm would expect a full $1,000.00 refund. Mr. Hulamm did not receive the money by January 17, 2012, and he filed a grievance with the Attorney Grievance Commission the next day. On January 22, 2012, Mr. Hulamm received a $500.00 check from Respondent.

On January 27, 2012, the Commission sent Respondent a letter enclosing Mr. Hulamm's complaint and requesting a response within fifteen (15) days. A follow-up letter was sent on February 24, 2012. Respondent responded on March 8, 2012. On April 12, 2012, the Commission wrote a letter seeking a copy of the retainer agreement with Mr. Hulamm and the billing invoice. A follow-up letter was sent on May 3, 2012. Respondent answered on May 11, 2012, explaining that he did not have a written retainer agreement or time records. On June 12, 2012, the Commission wrote a letter to Respondent asking for documentation that the client's fee had been maintained in trust until earned. A follow-up letter was sent July 6, 2012. On July 25, 2012, Respondent replied that he was unaware of the specific misconduct for which he was being investigated. The Commission sent a letter on September 4, 2012, suggesting that Respondent may be in violation of MLRPC 1.15(a) and (c), and Maryland Rule 16-606.1. Respondent replied on September 10, 2012.

On October 5, 2012, the Commission's investigator, Edwin Karr, Jr., attempted to call Respondent, but the number had been temporarily disconnected. Mr. Karr checked with the Maryland State Bar directory and an internal database, both of which listed the number he had called. On October 15, 2012, Mr. Karr visited Respondent's office and left his business card. Respondent called him later that day, but refused to set up an interview with the investigator without first being advised of the charges against him. The

7

Petition for Disciplinary of Remedial Action was filed April 15, 2013.

Judge Serrette further entered conclusions of law, determining that Mr. Weiers had

violated MLRPC 1.15(a) and 8.1(b), and Md. Rule 16-607. She explained:

## CONCLUSIONS OF LAW

* * * *

### MARYLAND RULES OF PROFESSIONAL CONDUCT 1.15(A) AND (C). SAFEKEEPING PROPERTY

* * * *

Respondent admitted that he did not keep time records, did not bill Mr. Hulamm, and did not advise Mr. Hulamm when he would be paying himself from the "nonrefundable" retainer for services rendered. Additionally, Respondent admitted that he did not take the $700.00 payment for some time after he had completed the work for which he had been retained.

Respondent credibly testified that the retainer had "probably" been exhausted by March, 2009, but that Mr. Hulamm continued to come to his office on a variety of matters. Only when Respondent had not heard from Mr. Hulamm for about two months and determined that the attorney-client privilege had ended did Respondent withdraw the balance of the retainer on March 18, 2010.

Respondent performed the services for which he was retained, earned the fee taken, and communicated with Mr. Hulamm on a somewhat regular basis about the action at issue in this case as well as other matters. Further, he maintained the requisite trust account records, with only the above-noted four-day mistake having been established.

To some extent, Respondent appeared to be the victim of the old adage, "no good deeds go unpunished." He repeatedly provided free legal advice to Mr. Hulamm, who in turn appeared to believe that Respondent should provide him free services. Respondent was not faultless, however. As in *Attorney Grievance Commission v. Tun*, 428 Md. 235, 51 A.3d 565 (2012), in which inadequate time records led to questions about entitlement to compensation which counsel had earned, Respondent Weiers'[s] failure to keep time sheets and to bill accordingly led to Mr. Hulamm's insistence that he was due a refund although Respondent had earned his fee. Further, Respondent's failure to timely pay himself for services rendered to Crescendo Realty, LLC, resulted

8

in the commingling of earned and unearned funds in Respondent's trust account for approximately one year. *See Attorney Grievance Commission v. Zuckerman*, 386 Md. 341, 370-73, 872 A.2d 693 (2005) (in which counsel failed to timely withdraw funds to which he was entitled).

Accordingly, while a violation of Rule 1.15(c) was not established, Petitioner established by clear and convincing evidence that Respondent violated Rule 1.15(a) by failure to timely withdraw earned fees.

\* \* \* \*

MARYLAND RULES OF PROFESSIONAL CONDUCT 8.1(B). BAR ADMISSION AND DISCIPLINARY MATTERS

\* \* \* \*

Petitioner argued that Respondent violated Rule 8.1(b) by: 1) failing to timely respond to letters from the Attorney Grievance Commission; and 2) refusing to meet with the Commission's investigator. The Commission cited two cases in support [of] the charge: *Attorney Grievance Comm'n v. Oswinkle*, 364 Md. 182, 772 A.2d 267 (2001), and *Attorney Grievance Comm'n v. Nelson*, 425 Md. 344, 40 A.3d 1039 (2012). In *Oswinkle*, Bar Counsel sent six letters and attempted three telephone calls to the attorney respondent between August 1998 and April 1999. 364 Md. at 185-86, 772 A.2d 269. Said respondent responded for the first time in late April, 1999 and represented that he would file a response the following week. 364 Md. at 186, 772 A.2d 269. He did not. *Id.* Respondent's conduct was held to be a violation of Rule 8.1(b), which "places an obligation on an attorney to respond to a lawful demand from Bar Counsel." 364 Md. at 189, 772 A.2d 270.

In *Van Nelson*, the respondent attorney, who had failed to respond to two letters from the Attorney Grievance Commission, refused to meet with the Bar Counsel investigator, failed to participate in the judicial hearing and whose whereabouts where unknown, was likewise found to have violated Rule 8.1(b) for knowingly failing to respond to a lawful demand for information from a disciplinary authority. 425 Md. at 353, 362, 40 A.3d 1044, 1049.

The instant case is unlike those cited by Petitioner. Respondent grudgingly responded to Petitioner, answering their questions, while contending throughout that he had not been informed of how he was alleged to have violated the Rules. On three occasions, Respondent failed to initially respond to inquiries, but in each case, he responded quickly to follow-up letters. The longest delay between an initial inquiry and a response was 43 days. Respondent's behavior was dilatory, rather than obstructionist.

9

Respondent refused to meet with the investigator, but ultimately responded to Petitioner's letters, appeared at deposition, and actively participated in this action.

Nonetheless, "Rule 8.1 places an obligation on an attorney to respond to a lawful demand from Bar Counsel. The rule does not distinguish between attorneys who fail to respond to lawful demands due to dilatoriness, on the one hand, and those on the other hand, who intentionally fail to respond. Moreover, the ultimate resolution of the complaint does not affect the determination of whether the rule has been violated. An attorney's obligation to respond to lawful demands of Bar Counsel applies when the attorney upon whom the demand is made is the focus of the investigation or when the investigation relates to the conduct of another attorney." *Oswinkle*, 364 Md. at 189, 772 A.2d at 270-71.

Respondent cannot be said to have "failed" to respond to the Attorney Grievance Commission, but his failure to readily cooperate constituted a violation of Rule 8.1(b).

* * * *

Maryland Rules, Rule 16-607. Commingling of Funds

* * * *

Rule 16-607(b)(2) provides, in pertinent part, that fees earned by counsel "shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds." As discussed above, Respondent waited approximately one year to withdraw the $700.00 to which he was entitled as a result of legal services provided for Hulamm/Crescendo Realty, LLC. Accordingly, he is in violation of Rule 16-607.

As to Respondent's alleged violations of MLRPC 1.1, 1.15(c), 1.5(a), 8.4(d), and Md. Rule 16-606.1, the hearing judge determined that the charges were not established by clear and convincing evidence.

## II.    Discussion

In attorney discipline proceedings, "this Court has original and complete jurisdiction

10

and conducts an independent review of the record . . . [T]he hearing judge's findings of fact generally will be accepted unless they are clearly erroneous." *Attorney Grievance Comm'n v. Cherry-Mahoi*, 388 Md. 124, 152, 879 A.2d 58, 76 (2005) (citations omitted). Pursuant to Maryland Rule 16-759(b)(2)(A), "[i]f no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any." In other words, we deem the hearing judge's findings of fact "correct if (1) they are not clearly erroneous, or (2), at th[is] Court's option, if neither party filed exceptions to them." *Attorney Grievance Comm'n v. Kremer*, 432 Md. 325, 334, 68 A.3d 862, 868 (2013) (citations omitted). Neither Petitioner nor Respondent filed exceptions to the hearing judge's findings of fact and conclusions of law.[8] Accordingly, as discussed *supra*, this Court accepts Judge Serrette's findings of fact as established for the purpose of determining the appropriate sanction.

The hearing judge's proposed conclusions of law are reviewed for legal correctness. *Attorney Grievance Comm'n v. West*, 378 Md. 395, 410, 836 A.2d 588, 596 (2003). "In other words, the ultimate determination . . . as to an attorney's alleged misconduct is reserved for this Court." *Attorney Grievance Comm'n v. De La Paz*, 418 Md. 534, 552, 16 A.3d 181, 192 (2011) (citation omitted). Having reviewed Judge Serrette's conclusions of law, we

---

[8] Indeed, Petitioner, despite appearing for oral argument, failed to file anything with this Court concerning the instant matter.

agree that Respondent violated MLRPC 1.15(a) and 8.1(b), as well as Md. Rule 16-607, finding these conclusions of law supported by the factual record.

### A.        MLRPC 1.15(a) and Md. Rule 16-607

This Court has made clear that an attorney's failure to withdraw earned fees from his or her trust account in a timely manner results in an impermissible commingling of funds violative of MLRPC 1.15(a) and Maryland Rule 16-607. *See Attorney Grievance Comm'n v. Thomas*, 409 Md. 121, 150, 973 A.2d 185, 202 (2009) (holding that the attorney's practice of leaving unearned fees in his trust account for an indeterminate amount of time violated both MLRPC 1.15(a) and Md. Rule 16-607); *Attorney Grievance Comm'n v. Zuckerman*, 386 Md. 341, 370-71, 872 A.2d 693, 710-11 (2005) (determining that the attorney violated both Rule 1.15(a) and 16-607 by failing, on multiple occasions, to remove earned fees held in trust for periods of one year or more); *Attorney Grievance Comm'n v. Sliffman*, 330 Md. 515, 525-26, 625 A.2d 314, 319 (1993); *cf. Attorney Grievance Comm'n v. Webster*, 348 Md. 662, 677, 705 A.2d 1135, 1142 (1998) ("The purpose of the anti-commingling rules is to protect client funds from the claims of creditors of the attorney."). In the instant case, the hearing judge found that Mr. Weiers withdrew the remaining balance of the Crescendo Realty, LLC retainer in March of 2010, despite having admittedly completed the work for which he was retained by March, 2009. This one-year delay resulted in a violation of MLRPC 1.15(a) and Md. Rule 16-607.

12

## B.        MLRPC 8.1(b)

Respondent's failure to cooperate readily and fully with Bar Counsel constitutes a violation of MLRPC 8.1(b). As we have previously explained,

> This Court has a long history of holding that an attorney violates Rule 8.1(b) by failing to respond to letters from disciplinary authorities requesting information. . . . The process of investigating complaints depends to a great extent upon an individual attorney's cooperation. Without that cooperation, the [disciplinary authority] is deprived of information necessary to determine whether the lawyer should continue to be certified to the public as fit.

*Attorney Grievance Comm'n v. Fezell*, 361 Md. 234, 249, 255, 760 A.2d 1108, 1116, 1119 (2000) (internal citations and quotations omitted); *see also Attorney Grievance Comm'n v. Jarosinski*, 411 Md. 432, 454, 983 A.2d 477, 490 (2009) (holding that "Respondent's failure to respond timely to Bar Counsel's inquiries and to cooperate fully . . . was a failure 'to respond to a lawful demand for information from [a] . . . disciplinary authority' and thereby violated M[L]RPC 8.1(b)") (citations omitted).

In the instant case, the hearing judge found that Mr. Weiers "grudgingly responded to Petitioner, answering their questions, while contending throughout that he had not been informed of how he was alleged to have violated the Rules," evincing "dilatory, rather than obstructionist" behavior. Importantly, Petitioner failed to respond initially to Bar Counsel's requests on several occasions–although ultimately responding to follow-up letters sent by Petitioner–and refused to meet with an investigator. Despite ultimately participating in this action, Mr. Weiers's conduct is indicative of his antipathy towards Bar Counsel and its

13

responsibilities, as well as the legitimacy of the attorney disciplinary process. This is reflected in Respondent's inflammatory letters to Bar Counsel stating, for instance:

> I do not know what misconduct you are investigating and I don't think you do either. Your latest demand appears to be a desperate attempt to justify the time you have wasted so far. . . I don't know if you are on a witch hunt, a personal vendetta, a fishing expedition, or if you just don't have enough to do, but I've had my fill of you. So either file a complaint or get the hell off my back.[9]

This attitude was also reflected in Respondent's statements during oral arguments, asserting for instance that this entire situation was "Kafkaesque."[10] These statements reflect a disparagement of and lack of regard for the Attorney Grievance Commission. In our review of the record, we agree with the hearing judge that Mr. Weiers's failure to cooperate readily with Bar Counsel constitutes a MLRPC 8.1(b) violation.

Given Respondent's position that Bar Counsel was somehow acting in "bad faith" by making, according to Respondent, baseless and unlawful demands during the investigation,

---

[9] In a follow-up letter, Respondent noted he was unaware "that Star Chamber had reached the shores of Maryland" explaining, "[he] had naively thought it was one of those institutions not suited for the conditions in the New World." Respondent is referring to a British tribunal, abolished in the mid-seventeenth century, notorious for its misuse by the English government, which "has for centuries symbolized disregard of basic individual rights." *Faretta v. California*, 422 U.S. 806, 821, 95 S. Ct. 2525, 2534, 45 L.Ed.2d 562, 574 (1975).

[10] Respondent furthered that he "underst[ood] Joseph K.'s position a little better now," apparently drawing a comparison between his own experience and fictional protagonist Joseph K.'s dealings with an opaque, corrupt legal system that charged him with a crime, the nature of which he was not informed. *See* FRANZ KAFKA, THE TRIAL. Unfortunately for Mr. K., he was mysteriously slain prior to reaching any conclusion to his legal predicament. *See id.*

14

and Respondent's continued insistence that there was no violation of Rule 8.1(b), we caution Respondent against future conduct of this nature and reaffirm the importance of Bar Counsel's role in regulating the legal profession. It is Bar Counsel's duty to investigate potential instances of misconduct and "[t]he Commission's authority to make lawful demands for information carries with it the authority to demand that attorneys furnish Bar Counsel with the requested information timely and within a reasonable period of time." *Attorney Grievance Comm'n v. Taylor*, 405 Md. 697, 718, 955 A.2d 755, 767 (2008). There is absolutely no indication that Bar Counsel's requests for information were inappropriate or unexplained. In making the requests for information, Bar Counsel supplied information sufficient for Respondent to understand the reason for the requests and the nature of the allegations against him. In any event, Bar Counsel was not required to explain how each record sought–such as trust account records in Mr. Weiers's case–related to the investigation so long as Bar Counsel clearly indicated which records he was seeking.[11] *Attorney Grievance Comm'n v. Khandpur*, 421 Md. 1, 12, 25 A.3d 165, 172 (2011).

In response to Mr. Weiers's objection at oral argument to the 8.1(b) violation, we point out that Respondent need not have intentionally failed to respond to Bar Counsel's requests for information to have violated 8.1(b). *Attorney Grievance Comm'n v. Oswinkle*, 364 Md. 182, 189, 772 A.2d 267, 270-71 (2001) (noting that "[8.1(b)] does not distinguish

---

[11] Mr. Weiers appeared to suggest that because Mr. Hulamm's complaint did not reference a trust account specifically, such information was off-limits to Bar Counsel's investigation.

15

between attorneys who fail to respond to lawful demands due to dilatoriness, on the one hand, and those on the other hand, who intentionally fail to respond."). More importantly, here, the record establishes that Respondent intentionally failed to respond as he objected to Bar Counsel's authority to request information of him. Similarly, that Respondent eventually responded to Bar Counsel's follow-up letters does not excuse his conduct. *Attorney Grievance Comm'n v. Taylor*, 405 Md. 697, 719, 955 A.2d 755, 768 (2008) (noting that "[w]hile respondent may have ultimately 'responded thoroughly and openly,' an untimely response does not excuse the failure to timely respond").

### III.    Sanction

Having concluded that Mr. Weiers violated MLRPC 1.15(a), 8.1(b), and Md. Rule 16-607, this Court must now determine the proper sanction. In determining the appropriate sanction, this Court is

> guided by our interest in protecting the public and the public's confidence in the legal profession. The purpose of [disciplinary] proceedings is not to punish the lawyer, but should deter other lawyers from engaging in similar conduct. The public is protected when we impose sanctions that are commensurate with the nature and gravity of the violations and the intent with which they were committed.

*Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 61, 891 A.2d 1085, 1101 (2006) (quoting *Attorney Grievance Comm'n v. Davis*, 375 Md. 131, 166-67, 825 A.2d 430, 451 (2003)). In reaching the appropriate sanction we look to the facts of the case, considering any aggravating or mitigating factors present. *Attorney Grievance Comm'n v. Bell*, 432 Md. 542,

16

560, 69 A.3d 1040, 1050 (2013); *Attorney Grievance Comm'n v. Post*, 379 Md. 60, 71, 839 A.2d 718, 724 (2003). "The attorney's prior grievance history, as well as facts in mitigation, constitutes part of those facts and circumstances. We also look to our past cases involving attorney discipline when imposing sanctions." *Attorney Grievance Comm'n v. Paul*, 423 Md. 268, 284-85, 31 A.3d 512, 522 (2011) (internal citations omitted).

In light of the hearing judge's findings, Petitioner recommends that Respondent be reprimanded. In support of its position, Petitioner relies on several cases in which this Court has issued reprimands for similar violations. *See Attorney Grievance Comm'n v. Sapero*, 400 Md. 461, 929 A.2d 483 (2007) (reprimand determined to be appropriate for violation of MLRPC 1.5(c), 1.15(a), and 8.1(b)); *Attorney Grievance Comm'n v. Oswinkle*, 364 Md. 182, 772 A.2d 267 (2001) (reprimand deemed appropriate for violation of MLRPC 8.1(b)); *Attorney Grievance Comm'n v. Bridges*, 360 Md. 489, 759 A.2d 233 (2000) (reprimand issued for violation of MLRPC 8.1(b) and (d)). In contrast, Respondent requests that this Court "do nothing."

We agree with Petitioner that the appropriate sanction is a reprimand. *Attorney Grievance Comm'n v. Lee*, 390 Md. 517, 527, 890 A.2d 273, 279 (2006) (explaining that a reprimand would serve the purpose of protecting the public and "serves as notice to the respondent and other attorneys that this Court considers [the attorney's MLRPC violations] serious matters"); *Attorney Grievance Comm'n v. Tolar*, 357 Md. 569, 585, 745 A.2d 1045, 1054 (2000) (noting that a reprimand serves the purpose of protecting the public in the same

manner as a short suspension); *Attorney Grievance Comm'n v. Powell*, 328 Md. 276, 302, 614 A.2d 102, 115 (1992) (explaining that "reprimand is appropriate for lawyers who fail to follow their established procedures") (citations omitted).

This Court finds *Sapero* instructive as to the appropriate sanction. In Sapero, we reprimanded an attorney for violating MLRPC 1.5(c), 1.15(a), and 8.1(b). With respect to Rule 1.15(a), this Court agreed with the hearing judge's finding that Sapero had committed an "unintentional violation," explaining that "the failure to remove [] earned fees . . . result[ed] from the Respondent's poor record keeping . . . There is no evidence that the Respondent's failure . . . was intentional and motivated by 'fraud, dishonesty, or deceit.'" *Sapero*, 400 Md. at 473-74, 929 A.2d at 490 (citations omitted). Sapero's 8.1(b) violation arose from his inability to timely respond to Bar Counsel's subpoena for trust account records, and was caused by disorganized record keeping practices. *Sapero*, 400 Md. at 485-86, 929 A.2d at 498. This Court noted that while "Respondent attempted to comply [with Bar Counsel's request] . . . [Sapero's] disorganization d[id] not excuse his violation of Rule 8.1(b)." *Sapero*, 400 Md. at 486, 929 A.2d at 496. Reprimand was deemed appropriate in *Sapero* because of the seriousness with which this Court views an attorney's ethical violations, notwithstanding the attorney's motive or the effect of the violation.

There is no indication that Mr. Weiers's failure to remove funds promptly in the present case was motivated by a selfish desire. Nor is there any indication that his failure to remove earned fees caused any detriment to his clients. Indeed, the hearing judge explained

18

that this situation arose, in part, from Mr. Weiers's "failure to keep time sheets and to bill accordingly." In other words, Respondent's Rule 1.15(a) and 16-607 violations were not willful, but rather the result of Mr. Weiers's admitted inability to keep proper billing records from the outset of his relation with Mr. Hulamm. Unlike in *Sapero*, however, Mr. Weiers does not appear to fully appreciate the importance of his responsibilities under MLRPC 8.1(b). Although Respondent filed neither exceptions to the hearing judge's findings, nor sanction recommendations, during oral argument Respondent expended considerable time contesting the merits of his 8.1(b) violation.

As in *Sapero*, Respondent's conduct in this case caused no harm to his clients. Respondent has no history of prior disciplinary offenses, and there is no evidence that his conduct was motivated by a dishonest or selfish motive. Although Respondent failed to timely comply with Bar Counsel's requests for information, Respondent ultimately responded to Bar Counsel and participated in the disciplinary process. Mindful of Respondent's troubling attitude toward Bar Counsel and the investigative process, and having cautioned Respondent against such conduct in the future, we conclude that a reprimand is the appropriate sanction in this case.

> **IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO RULE 16-761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST DAUN ROBERT WEIERS.**

19