**ENTRY ORDER**

2024 VT 18

SUPREME COURT CASE NO. 24-AP-070

MARCH TERM, 2024

| | | |
|---|---|---|
| In re Eva P. Vekos, Esq. | } | Original Jurisdiction |
| (Office of Disciplinary Counsel) | } | |
| | } | Professional Responsibility Board |
| | } | |
| | } | CASE NO. PRB-097-2024 |

In the above-entitled cause, the Clerk will enter:

¶ 1. Respondent Eva P. Vekos is an attorney licensed to practice law in the State of Vermont. She is currently the State's Attorney for Addison County. On March 1, 2024, Disciplinary Counsel filed a petition seeking the immediate interim suspension of respondent's license under Administrative Order 9, Rule 22(A). Respondent provided a written response to the petition and the Court held a hearing on the petition on March 20, 2024, which was attended by Disciplinary Counsel, respondent, and respondent's counsel. Having reviewed the materials submitted by Disciplinary Counsel, we conclude that the requirements of A.O. 9, Rule 22(A), are satisfied and we immediately suspend respondent's license to practice law on an interim basis in accordance with A.O. 9, Rule 22(B). Respondent is directed to comply with the notice requirements of A.O. 9, Rule 27.

¶ 2. As set forth in the petition for immediate interim suspension, in late January 2024, Disciplinary Counsel learned of respondent's arrest for operating or attempting to operate a motor vehicle while under the influence of alcohol (DUI). He obtained a copy of a press release from the Vermont State Police (VSP) summarizing the alleged circumstances that led to respondent's DUI arrest and citation. Disciplinary Counsel determined that respondent's alleged actions with respect to her DUI arrest, if true, could constitute attorney misconduct under the Vermont Rules of Professional Conduct, and he opened an investigation.

¶ 3. Pursuant to this investigation, Disciplinary Counsel emailed respondent on January 26, 2024, and directed her to provide him with a written response by February 15, 2024 "addressing the allegations against you contained in the attached VSP press release and how they may bear upon your fitness to practice law." Attorney David Sleigh later emailed Disciplinary Counsel to state that he was representing respondent with respect to the disciplinary investigation. After an exchange of emails, Attorney Sleigh agreed to provide the requested statement by February 15.

¶ 4. On February 1, 2024, Disciplinary Counsel became aware that respondent had emailed a number of high-ranking Vermont law enforcement officers. The email stated, in part, that respondent would no longer personally meet with them in the course of her duties as State's Attorney "because [she] no longer feel[s] safe around law enforcement.". Disciplinary Counsel

later obtained and reviewed a copy of respondent's email correspondence with these law enforcement officers.

¶ 5. Respondent was thereafter charged and arraigned on the DUI charge; she pled not guilty.

¶ 6. On February 15th, Disciplinary Counsel learned that Attorney Sleigh had issued a press release on respondent's behalf stating that respondent was now on "medical leave" from her position as Addison County State's Attorney. Attorney Sleigh was quoted as stating that "[w]e think it's a public interest that [respondent] is stepping away for a while." He indicated that respondent would return to the job when "fully grounded" and "up to the task." Disciplinary Counsel emailed Attorney Sleigh to request that in the submission due on February 15, respondent also discuss "the reasons/causes, nature and expected duration of [her] medical leave" and further that counsel provide a copy of the press release referenced above. Attorney Sleigh responded that he would not have time to do so and would comply by February 23.

¶ 7. On February 15, Attorney Sleigh sent Disciplinary Counsel a copy of the press release as well as a written response to Disciplinary Counsel's January 26th request that respondent "address[] the allegations against you contained in the attached VSP press release and how they may bear upon your fitness to practice law." The response did not address respondent's medical leave or discuss any facts bearing upon whether she may be currently incapacitated by a physical or mental condition from practicing law.

¶ 8. On February 16th, Disciplinary Counsel emailed Attorney Sleigh to stress that if respondent "is physically or mentally incapacitated from practicing law (which is what taking a medical leave would strongly suggest), [he] need[ed] to know the details of that promptly," rather than waiting another week for such information. Disciplinary Counsel also requested an examination of respondent's "relevant health records and [to] perhaps speak to her treaters." Attorney Sleigh did not respond.

¶ 9. On February 26, Disciplinary Counsel warned respondent that he might seek her immediate interim suspension given her failure to cooperate with his investigation. Attorney Sleigh responded that day that respondent "plans on returning to work soon" and "[t]here's no reason for you to examine her health records or speak to her treaters" because "she has no mental or physical issues that would impede her ability to practice law." Disciplinary Counsel noted that Attorney Sleigh had publicly characterized respondent's self-imposed hiatus from her law practice as a "medical leave," and he therefore required "an explanation and related documentation of the medical reasons for the leave," as well as clarification on when exactly respondent planned to resume her duties, other than "soon." As of the filing of his petition on March 1, Disciplinary Counsel had no further communications with Attorney Sleigh.

¶ 10. Under A.O. 9, Rule 22(A), an interim suspension order is appropriate where an attorney has "(1) either committed a violation of the rules of professional responsibility . . . or is under a disability under [A.O. 9,] Rule 25," and (2) the attorney "presently poses a substantial threat of serious harm to the public." "The purpose of an interim suspension is to quickly protect the public from harm" and "[i]t is not the equivalent of a suspension imposed as a sanction

2

following a determination of misconduct under A.O. 9, Rule 15(A)(2)." In re Carris, 2021 VT 32, ¶ 2, 214 Vt. 648, 254 A.3d 849 (mem.). "[I]t is an interim order put in place until a final disposition is made pursuant to either disciplinary or disability proceedings. Id.

¶ 11.    Disciplinary Counsel argues that an immediate interim suspension is warranted here because respondent violated Vermont Rule of Professional Conduct 8.1(b), and she "presently poses a substantial threat of serious harm to the public." A.O. 9, Rule 22(A). We agree.

¶ 12.    Rule 8.1(b) prohibits a lawyer, "in connection with a disciplinary matter," from "knowingly fail[ing] to respond to a lawful demand for information from . . . [a] disciplinary authority." V.R.Pr.C. 8.1(b). Rule 8.1(b) is based on a model rule, the annotations to which recognize that "[l]etters from disciplinary counsel . . . seeking information constitute lawful demands; subpoenas are not required." See Model Rules of Pro. Conduct r. 8.1 annot. (Am. Bar Ass'n 2023) [hereinafter Model Rules] (citing cases on "Duty to Respond"); see also Att'y Grievance Comm'n of Md. v. Fezell, 760 A.2d 1108, 1115-16 (Md. 2000) (looking to identical Model Rule to define "lawful demand," and explaining that "[u]niversally, the ABA Model Rule has been interpreted to require an attorney to respond to letters or telephone calls from the disciplinary authority without the use of a subpoena" and citing cases). As this and other courts have recognized in suspending attorneys for violations of this rule, the "process of investigating complaints depends to a great extent upon an individual attorney's cooperation," and "[w]ithout that cooperation, the [disciplinary authority] is deprived of information necessary to determine whether the lawyer should continue to be certified to the public as fit." Att'y Grievance Comm'n of Md. v. Weirs, 102 A.3d 332, 341 (Md. 2014) (quotation omitted).

¶ 13.    In this case, as set forth above, Disciplinary Counsel opened a disciplinary investigation following respondent's DUI arrest. When respondent publicly announced that she was taking a "medical leave" from her position until she was "fully grounded" and "up to the task," Disciplinary Counsel reasonably requested that respondent provide information regarding "the reasons/causes, nature and expected duration of [her] medical leave," among other things. Respondent said she was too busy to respond immediately and she did not provide any information by February 23 as she stated she would. Respondent did not assert that any of the information requested by Disciplinary Counsel was privileged; she simply did not respond. When Disciplinary Counsel reached out to respondent for a third time on February 26, respondent's attorney essentially told him that he should not be concerned. When Disciplinary Counsel reiterated his request, respondent again failed to respond. Her conduct plainly violated Rule 8.1.

¶ 14.    We note that this case is not about whether respondent's medical records should be provided to Disciplinary Counsel. Should a question arise about whether certain records are privileged, the rules provide a process by which such issues may be pursued. See A.O. 9, Rule 19. The issue here is solely about whether respondent responded to a lawful demand for information under Rule 8.1. She did not. The information in respondent's press release was sufficient to cause Disciplinary Counsel to inquire into the situation and it was a lawful demand. As set forth above,

respondent gave no information to Disciplinary Counsel in response to his request, aside from a copy of the press release announcing respondent's "medical leave."[*]

¶ 15. Respondent's behavior presents a substantial threat of harm to the public. Because she did not cooperate with Disciplinary Counsel, he "cannot determine if a disability investigation should be opened," and he "cannot assess how to protect the public." In re Legus, 2020 VT 40, ¶ 5, 212 Vt. 653, 235 A.3d 517 (mem.). As in Legus, "[r]espondent's behavior has significantly impaired Disciplinary Counsel's ability to fulfill [his] obligation to protect the public and it warrants the immediate interim suspension of respondent's license to practice law." Id.; see also In re Tao, 2022 VT 7, ¶ 6, 216 Vt. 596, 273 A.3d 652 (mem.) (reaching similar conclusion where attorney failed to cooperate with Disciplinary Counsel).

¶ 16. Numerous courts have reached similar conclusions. See Model Rules, r. 8.1 annot. (regarding "Discipline as a Lawyer for Lack of Candor to Admissions Authorities" recognizing that "Rule 8.1(b) imposes what is usually described as a duty of cooperation," and explaining that "lawyer who ignores or falsely responses to a disciplinary authority's request for information can be disciplined for violating Rule 8.1 even if the disciplinary authority does not bring, or dismisses, any other charges of misconduct") (citing cases); see also In re Liviz, 144 N.E.3d 284, 285-86 (Mass. 2020) (affirming suspension of respondent from practice of law for failing to respond to bar counsel's requests for information during disciplinary investigation, and explaining that respondent was suspended, not for conduct under investigation, but instead for failing to cooperate, which itself constituted misconduct subject to discipline under rules).

¶ 17. In Weirs, 102 A.3d at 341, for example, the court held that a respondent's "failure to cooperate readily and fully with Bar Counsel" violated Maryland Rule of Professional Conduct 8.1, which, like Vermont, is based on the ABA Model Rule. The respondent there took the position that Bar Counsel "was somehow acting in 'bad faith' by making, according to [the] respondent, baseless and unlawful demands during the investigation," and that he therefore did not violate Rule 8.1 by refusing to readily cooperate. Id. The court "cautioned [the] respondent against future conduct of this nature and reaffirm[ed] the importance of Bar Counsel's role in regulating the legal profession." Id. at 342. It emphasized "Bar Counsel's duty to investigate potential instances of misconduct" and noted that the "authority to make lawful demands for information carries with it the authority to demand that attorneys furnish Bar Counsel with the requested information timely and within a reasonable period of time." Id.; see also Model Rules, r. 8.1 (regarding "Response Must Be Timely" recognizing that "response to a demand for information must be timely," and that "lawyer's eventual response does not cure the initial delay" (citing cases)).

¶ 18. We reach a similar conclusion. Both practicing attorneys and those seeking admission to the Vermont Bar have a responsibility to comply with the Rules of Professional Conduct, including Rule 8.1. The requirement is not a hypertechnical one. As set forth above, it

---

[*] We note that the Bar Assistance Program remains an available resource for attorneys, including respondent. See A.O. 9, Rules 4-7. We encourage attorneys to take time away from practicing law when needed. In this case, however, respondent provided Disciplinary Counsel with no information about any issues that she might be experiencing. Absent cooperation from respondent, Disciplinary Counsel cannot assess the full scope of the circumstances involved, including whether a referral to a Bar Assistance Program might be appropriate.

plays a critical role in allowing Disciplinary Counsel to fulfill his duties and in ensuring that those who practice law are fit to do so. We conclude that the evidence here warrants the immediate interim suspension of respondent's license to practice law.

Respondent's license to practice law is immediately suspended on an interim basis. Respondent is directed to comply with the notice requirements of A.O. 9, Rule 27.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Harold E. Eaton, Jr., Associate Justice

_____
Karen R. Carroll, Associate Justice

_____
William D. Cohen, Associate Justice

_____
Nancy J. Waples, Associate Justice